UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

THE CANADIAN ST. REGIS BAND OF MOHAWK
INDIANS, *et al.*,

|  |  |
|---|---|
| Plaintiffs, | 5:82-CV-0783 (Lead) |
|  | 5:82-CV-1114 (Member) |
| v. | 5:89-CV-0829 (Member) |

THE STATE OF NEW YORK, *et al.*,

Defendants.

_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| HOBBS STRAUS DEAN & WALKER<br>Attorneys for Plaintiff St. Regis Mohawk<br>  Tribe, by the St. Regis Mohawk Tribal Council<br>  (5:89-CV-829 & 5:82-CV-783)<br>2120 L Street, N.W., Suite 700<br>Washington, DC 20037 | MARSHA K. SCHMIDT, ESQ.<br>MICHAEL L. ROY, ESQ. |
| SONOSKY CHAMBERS LAW FIRM<br>Attorneys for Plaintiffs Canadian St. Regis Band of<br>  Mohawk Indians (5:82-CV-1114 & 5:82-CV-783)<br>1424 K Street, N.W., Suite 600<br>Washington, DC 20005 | JAMES T. MEGGESTO, ESQ.<br>ARTHUR LAZARUS, ESQ. |
| INDIAN LAW RESOURCE CENTER<br>Attorneys for Plaintiffs People of Longhouse at<br>  Akwesasne by Mohawk Nation Counsel of Chiefs<br>  (5:89-CV-829)<br>601 E. Street, S.E.<br>Washington, DC 20003 | ALEXANDRA C. PAGE, ESQ. |
| ALEXANDER, BERKEY, WILLIAMS &<br>  WEATHERS, LLP<br>Attorneys for Plaintiffs People of Longhouse at<br>  Akwesasne by Mohawk Nation Counsel of Chiefs<br>  (5:89-CV-829)<br>2000 Center Street, Suite 308<br>Berkeley, CA 94704 | CURTIS G. BERKEY, ESQ. |

U.S. DEPARTMENT OF JUSTICE                          JAMES B. COONEY, ESQ.
Environment & Natural Resources Division
Indian Resources Section
Attorney for Plaintiff-Intervenor United States of America
 (5:89-CV-829, 5:82-CV-783 & 5:82-CV-1114)
L'Efant Plaza Station, P.O. Box 44378
Washington, DC 20026-4378


U.S. DEPARTMENT OF INTERIOR                         DAVID MORAN, ESQ.
 OFFICE OF THE SOLICITOR
1849 C Street, N.W.
Washington, DC 20240


HISCOCK & BARCLAY, LLP                              JUDITH M. SAYLES, ESQ.
Attorneys for Defendants County of St. Lawrence,
 County of Franklin, Village of Massena, Town of
 Massena, Town of Bombay, Town and Village of
 Fort Covington, Key Bank of Northern New York, N.A.,
 Nationwide Mutual Insurance Co., Niagara Mohawk
 Power Co., Marine Midland Properties Corporation,
 Walsh Realty Corporation, and Canadian National
 Railways (5:89-CV-829, 5:82-CV-783 & 5:82-CV-1114)
P.O. Box 4878
Syracuse, NY 13221-4878


HON. ELIOT L. SPITZER                               DAVID B. ROBERTS, ESQ.
Attorney General for the State of New York          CHRISTOPHER W. HALL, ESQ.
Attorney for State Defendants                       Assistant Attorneys General
 (5:89-CV-829, 82-CV-783 & 82-CV-1114)
The Capitol
Albany, NY 12224


MANATT, PHELPS & PHILLIPS, LLP                      O. PETER SHERWOOD, ESQ.
Attorneys for Defendant New York Power Authority
 (89-CV-829 & 82-CV-1114)
1675 Broadway, 27th Floor
New York, NY 10019


SNELL & WILMER, LLP                                 MARCIE MONTGOMERY, ESQ.
Attorneys for Movant-Intervenor                     HEIDE STAUDENMAIER, ESQ.
 Mohawk Council of Kahnawá:ke
One Arizona Center
Phoenix, AZ 85004

GEORGE H. LOWE, United States Magistrate Judge

## REPORT-RECOMMENDATION

On January 31, 2005, non-party Kanion'ke:haka Kaianereh'ko:wa Kanon'ses:neh filed a document entitled "Notice of Jurisdictional Suggestion" under Fed. R. Civ. P. 12(h)(3).  (Dkt. No. 368.)  On February 18, 2005, the Honorable Neal P. McCurn, Senior United States District Judge, referred this matter to me for a Report-Recommendation in accordance with 28 U.S.C. § 636, Rule 72(b) of the Federal Rules of Civil Procedure, and Rule 72.1 of the Local Rules of Practice for this Court.  (Dkt. No. 374.)

I will treat this "Notice of Jurisdictional Suggestion" as a "motion" for three reasons: (1) it was filed with a notice, supporting memorandum of law and affidavit, selected return date, and proof of service, as is required of a motion under Fed. R. Civ. P. 7(b) and N.D.N.Y. L.R. 7.1(a) (*see* Dkt. No. 368 [adopting by reference Dkt. No. 364); (2) the functional effect of a challenge to a court's jurisdiction is a request for an order of dismissal,[1] and an application for an order is a "motion" under Fed. R. Civ. P. 7(b)(1); and (3) courts routinely treat "suggestions" filed under Fed. R. Civ. P. 12(h)(3) as "motions" (*see*, *e.g.*, *Parker v. American National Bank and Trust Co. of Shawnee, Oklahoma*, Civ-74-770, 1981 U.S. Dist. LEXIS 18148, *1 (W.D. Okla. Apr. 27, 1981) ("The Court treated Defendant's Suggestion as a Motion to Dismiss pursuant to Rule 12(h)(3).").[2]

---

[1]       *See*, *e.g.*, *Clissuras v. CUNY*, 359 F.3d 79, 81 n.3 (2d Cir. 2004) (treating a "suggestion" to the court, in the form of a letter, that subject matter jurisdiction was lacking as a request for a dismissal order under Rule 12[h][3]).

[2]       *See also Gold v. Katz*, 90 Civ. 7726, 1991 U.S. Dist. LEXIS 15944, *1-2, 12 (S.D.N.Y. Nov. 4, 1991) (referring to "suggestion" under Rule 12[h] as a "motion"); *In re Loews Dominicana Inc.*, 78-B-1617, 1980 Bankr. LEXIS 4880, *8 & n.20 (Bankr. S.D.N.Y. July 1,

Treating this "suggestion" by Kanion'ke:haka Kaianereh'ko:wa Kanon'ses:neh as a "motion," I recommend that the motion be denied for the reasons that follow.

## I.   STANDARD FOR MOTION BROUGHT UNDER RULE 12(h)(3)

Rule 12(h)(3) of the Federal Rules of Civil Procedure provides that "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."  Fed. R. Civ. P. 12(h)(3).  Because the burdens, inferences and standards involved in this rule are somewhat unusual, careful consideration of the rule is necessary.

Generally, "[m]otions brought pursuant to Rule 12(h)(3) are subject to the same standard as motions to dismiss for want of subject matter jurisdiction brought pursuant to Rule 12(b)(1)." *Correspondent Serv. Corp. v. JVW Inv., Ltd.*, 99 Civ. 8934, 2004 U.S. Dist. LEXIS 19341, *15 (S.D.N.Y. Sept. 30, 2004) (citations omitted).  The main "distinction between a Rule 12(h)(3) motion and a Rule 12(b)(1) motion is simply that the former may be asserted at any time and need not be responsive to any pleading of the other party."  *Berkshire Fashions, Inc. v. M.V. Hakusan II*, 954 F.2d 874, 879 n.3 (3d Cir. 1992) (citation omitted).

However, there is another, more subtle, distinction: a motion under Rule 12(h)(3) need not state with particularity the grounds in favor of dismissal in order to succeed, as do other

---

1980) (referring to "suggestion" under Rule 12[h] as a "motion"); *Williams v. U.S.*, 42 F.R.D. 609, 612-13 (S.D.N.Y. 1967) (treating "suggestion" of lack of subject matter jurisdiction as informal motion under Rule 12[h]); *Mertens v. Flying Tiger Line, Inc.*, 35 F.R.D. 196, 197 (S.D.N.Y. 1963) (referring to "suggestion" under Rule 12[h] as a "motion"); *Kantor v. Comet Press Books Corp.*, 187 F. Supp. 321, 322 (S.D.N.Y. 1960) (referring to "suggestion" under Rule 12[h] as a "motion").

motions.[3]  *See* Fed. R. Civ. P. 12(h)(3) (analysis triggered "by suggestion of the parties or otherwise" that the court lacks such jurisdiction).  Rather, "[o]nce subject matter jurisdiction is challenged, the burden of establishing jurisdiction rests with the party asserting that it exists." *Correspondent Serv. Corp.*, 2004 U.S. Dist. LEXIS 19341 at *16 (citations omitted), *accord*, *Stephens v. American Home Assur. Co.*, 811 F. Supp. 937, 959-60 (S.D.N.Y. 1993) ("contention" that subject matter jurisdiction is lacking is sufficient to shift burden of proof to party asserting that jurisdiction exists) (citation omitted), *vacated on other grounds*, 70 F.3d 10 (2d Cir. 1995).

"The party asserting subject matter jurisdiction must prove that the court has such jurisdiction by a preponderance of the evidence." *Correspondent Serv. Corp.*, 2004 U.S. Dist. LEXIS 19341 at *16 (citations omitted).  In deciding whether the non-movant has met this burden of proof, "a court must accept as true all material factual allegations in the complaint." *Peterson v. Cont'l Airlines*, 970 F. Supp. 246, 249 (S.D.N.Y. 1997) (citations omitted). "However, argumentative inferences favorable to the party asserting jurisdiction should not be drawn."  *Peterson*, 970 F. Supp. at 249 (citations omitted).

In addition, to the extent there are "disputed jurisdictional fact issues," a "court *may* resolve [those] fact issues by reference to evidence outside the pleadings, such as affidavits." *Peterson*, 970 F. Supp. at 249 (citation omitted) [emphasis added].[4]  "[A Court] '*must*' [consult evidence outside the pleadings] if resolution of a proffered factual issue may result in the

---

[3]     *See* Fed. R. Civ. P. 7(b)(1) (requiring motions to, *inter alia*, "state with particularity the grounds therefor"); N.D.N.Y. L.R. 7.1(b)(3) (requiring the moving party to meet "its burden to demonstrate entitlement to the relief requested" before the Court will deem the non-moving party's failure to respond to the motion as consent to the granting of the motion).

[4]     *Accord*, *Correspondent Serv. Corp.*, 2004 U.S. Dist. LEXIS 19341 at *15 (citations omitted).

dismissal of the complaint for want of jurisdiction." *Robinson v. Gov't of Malay.*, 269 F.3d 133, 140-141 & n.6 (2d Cir. 2001) (motion to dismiss under 12[b][1] for lack of subject matter jurisdiction) (citations omitted) [emphases added].

## II.    ANALYSIS

### A.    Strongest Argument by Non-Movants

The strongest argument advanced by the non-movants is a simple one, with two premises: (1) 28 U.S.C. § 1331 confers onto federal courts subject matter jurisdiction over all "federal questions," which the statute defines as "all civil actions arising under the Constitution, laws, or treaties of the United States," and (2) the current civil action is an Indian land claim arising under both the laws of the United States (e.g., 25 U.S.C. § 177 [the Nonintercourse Act], 42 U.S.C. § 1983, and federal common law) and certain treaties of the United States (e.g., the Treaty with the Seven Nations of Canada of 1796, and the Treaty of Ghent of 1814).  (Dkt. No. 398 at 2-3.)[5]

As stated above, I must accept as true (for purposes of this motion) all material factual allegations in the Amended Complaint and the Amended Complaint in Intervention (Dkt. Nos. 13, 223).  Based on the above argument by the non-movants, and the factual allegations of the pleadings, I am inclined to conclude that the non-movants have met their burden.  This is because, taken as true, the factual allegations in the pleadings support the non-movants'

---

[5]        This argument appears to be based on *Oneida Indian Nation v. County of Oneida*, in which the Supreme Court stated: "Given the nature and source of the possessory rights of Indian tribes to their aboriginal lands, particularly when confirmed by treaty, it is plain that the complaint asserted a controversy arising under the Constitution, laws, or treaties of the United States within the meaning of both § 1331 and § 1362."  414 U.S. 661, 667 (1974).

argument.[6]

However, of course, I am obliged to consider the arguments raised by Kanion'ke:haka Kaianereh'ko:wa Kanon'ses:neh (the "movant") in its motion papers.  As mentioned earlier, in doing so, if I find that the movant has disputed a jurisdictional fact, and if I find that the Court's resolution of that fact may result in the dismissal of the complaint for want of jurisdiction, I must consider evidence outside the pleadings, such as the affidavit submitted by the movant.  (Dkt. No. 368 [adopting by reference Dkt. No. 364].)

### B.       Response by Movant

In support of its motion, the movant relies on a three-page, single-spaced memorandum of law, a two-page affidavit, and a nine-page reply brief.  (Dkt. No. 368 [adopting by reference Dkt. No. 364]; Dkt. No. 414.)  Construing this *pro se* movant's motion papers liberally, the movant appears to advance two related arguments.

The movant's first argument appears to be this: (1) this Court's territorial jurisdiction is coextensive with, and contemporaneous with, Congress' territorial jurisdiction; (2) when Congress conferred to federal courts territorial jurisdiction over the lands that are the subject of this litigation,[7] Congress did not have territorial jurisdiction over the lands that are the subject of

---

[6]      (*See, e.g.*, Dkt. No. 13, ¶ 1 [alleging that plaintiffs are "descendants of the Indians of the village of St. Regis" and are successors in interest with regard to "certain land reserved to the Indians of the village of St. Regis in the Treaty With the Seven Nations of Canada, 7 Stat. 55 (1796) . . . , which lands are subject to the protection of the Indian Non-Intercourse Act, 25 U.S.C. 177"]; ¶¶ 49-56 [alleging that New York State violated the Nonintercourse Act by entering into seven unlawful purchases, between 1816 and 1845, of the aforementioned land with purported representatives of the "St. Regis Indians"], ¶¶ 60-62 [alleging violation of 42 U.S.C. § 1983]); *accord*, Dkt. No. 223, ¶¶ 1, 2, 13, 17.)

[7]      Presumably, the movant would argue that Congress conferred this jurisdiction in or around 1911.  *See* the former 28 U.S.C. 41(1) (enacted in 1911), which was the predecessor of

7

this litigation; (3) Congress did not have such territorial jurisdiction because that jurisdiction required the existence of, in pertinent part, a valid treaty regarding the lands that are the subject of this litigation; and (4) the treaties at issue in this litigation (entered into between 1796 and 1845) were invalid because the Indians who entered into them were not authorized to do so by the constitution of the rightful owners of the lands that are the subject of this litigation.[8]

The movant's second argument appears to be this: (1) after the enactment of the Appropriations Act of 1871, 25 U.S.C. § 71, the federal government started contracting, not with sovereign Indian nations, but with "puppet governments" of the Indians who had no interest in the lands in question independent of the federal government's interest in those lands; (2) these contracts occurred in the form of settlement agreements, and constituted *de facto* "treaties" that were invalid under the United States Constitution; and (3) the current Indian plaintiffs are members of such a "puppet government[]," and the current proposed settlement agreement is such an invalid treaty.[9]

---

28 U.S.C. § 1331 (enacted in 1948).

[8]     (*See, e.g.*, Dkt. No. 368 ["The argument is that this Court is a statutory tribunal whose territorial jurisdiction exists under Congressional enactment and Congress itself has no territorial jurisdiction because the basis of the complaint is unextinguished Indigenous sovereignty."]; Dkt. No. 364 [Mem. of Law] at 1 ["In racial citizenship matters the Supreme Court has held the judicial duty is to protect the People's sovereignty against federal government enlargement of the 'delegated' federal jurisdiction by means other than a constitutional amendment."].)

[9]     (*See, e.g.*, Dkt. No. 364 [Mem. of Law] at 2 ["Therefore the settlement of this action and the Senate ratification recording Indian consent is political rather than legal. . . .  [T]he constitutionally stipulated treaty process is still the constitutional precondition to the extinguishment of the constitutional Indian interest that exists . . . under the Kaianereh'ko:wa backed up by the U.S. Constitution.  Correspondingly the identity of the Indian high contracting party is a matter to be ascertained under the constitutional law, not under the conflicting federal law. . . .  The federal Indian law plaintiffs have not acquired any constitutional law interest as

Distilled down to their most relevant elements, the movant's arguments appear to challenge both premises of the aforementioned two-premise argument advanced by the non-movants.[10]  Specifically, the movant appears to make the following legal argument: 28 U.S.C. § 1331 could not confer onto this Court subject matter jurisdiction over this Indian land claim case because, at the time Congress enacted 28 U.S.C. § 1331 (or its predecessor 28 U.S.C. 41[1]), Congress did not have territorial jurisdiction over the lands that are the subject of this dispute.

In addition, the movant appears to make the following factual argument: the current civil action does not arise under a federal treaty (e.g., the Treaty of 1796), or a federal statute (e.g,, the Nonintercourse Act, 25 U.S.C. § 177), or even the Constitution (e.g., the Indian Commerce Clause and the Treaty Clause), as required by 28 U.S.C. § 1331, because (1) the Indians who entered into any treaties between 1796 and 1845 were not authorized by the true owners of the lands in question to enter into those treaties and/or (2) the current Indian plaintiffs are not the true owners of the lands in question and thus do not have the legal right (or standing) to bring or settle any claim under any treaties, federal statute, or the constitutional provision, with regard to those

---

bodies politic under the Indigenous constitution the Kaianereh'ko:wa.  They are therefore not legally competent in terms of ceding, under Art. II, § 2, cl. 2, the constitutional law Indigenous interest of the . . . Indigenous bodies politic . . . .  The federal Indian plaintiffs are incorporated under and are subject to federal law.  They have no interest 'independent' of the federal government."]; Dkt. No. 414 at 3 ["Congress sets up puppet governments such as the other parties herein and establishes a *de facto* dependency relationship with them, the threat of withdrawal of which is then used, by the USA, to extort 'Treaties' from these *de facto* dependent municipalities, as if they were the real indigenous national governments."].)

[10]     I note that the movant's argument can be characterized as containing both a "facial attack on subject matter jurisdiction" and a "factual attack on subject matter jurisdiction"–which distinction Judge McCurn recognized in a prior decision on a separate motion to dismiss under Rule 12(b)(1) in this case.  *See Canadian St. Regis Band of Mohawk Indians v. New York*, 146 F. Supp. 2d 170, 183 n.11 (N.D.N.Y. 2001) (citing *Holt v. U.S.*, 46 F.3d 1000, 1002-1003 [10th Cir. 1995]).

lands.  In this respect, the movant attempts to dispute certain jurisdictional facts alleged in the pleadings.[11]

### C.     Evaluation of Arguments

I am unpersuaded by the movant's legal argument for three reasons.  First, the movant confuses "territorial jurisdiction" with the relevant type of jurisdiction for purposes of a Rule 12(h)(3) motion–"subject matter jurisdiction."  Congress need not have "territorial jurisdiction" over a foreign nation to confer onto a federal court "subject matter jurisdiction" over cases arising from alleged violations of United States law that occur in that nation.  Two notable examples of the exercise of such subject matter jurisdiction in recent years are cases arising from the extraterritorial application of federal antiterrorism laws and federal antitrust laws.  *See* 18 U.S.C. §§ 2331, *et seq.*; 15 U.S.C. §§ 1, *et seq.*  Simply put, the movant is mistaken when it argues that "federal law's territorial application is precluded until there has been a bilateral nation-to-nation treaty between the two constitutionally stipulated governments."  (Dkt. No. 414,

---

[11]     (*See*, *e.g.*, Dkt. No. 13, ¶ 1 ["This is a class action brought on behalf of all descendants of the Indians of the village of St. Regis against a defendant class.  Plaintiffs seek a declaration that they own and are entitled to possess certain land reserved to the Indians of the village of St. Regis in the Treaty With the Seven Nations of Canada, 7 Stat. 55 (1796) . . . ."], ¶ 2 ["The matter in controversy arises under the Constitution, laws and treaties of the United States, and under the Indian Non-Intercourse Act, a law of the United States regulating commerce.  This is a civil action to redress the deprivation . . . of rights, privileges and immunities secured by the Constitution and laws of the United States."], ¶¶ 4-12 [alleging that the Indian plaintiffs are the direct descendants of the Indians of the Village of St. Regis], ¶ 32 ["The representatives of the plaintiff class will fairly and adequately represent the interests of the class."], ¶ 45 ["In accordance with the Non-Intercourse Act of 1793, the Seven Nations of Canada, a league including the Mohawk Indians of the village of St. Regis, entered into a treaty with the State of New York attested to by a federal commissioner on May 31, 1796."], ¶ 46 ["Under the 1796 treaty the Seven Nations, among the representatives of which was a chief of the St. Regis Mohawks, ceded to the State of New York all of their lands in the United States with the exception of" certain tracts of land.].)

¶ 18.)

Second, the movant underestimates the broad impact of the United States Constitution, specifically the Indian Commerce Clause and the Treaty Clause, on the authority (or jurisdiction) of Congress, and the federal courts, over Indian matters. *See* U.S. Const. art. I, § 8, cl. 3 ("The Congress shall have Power . . . To regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes."); U.S. Const. art. II, § 2, cl. 2 ("[The President] shall have Power, by and with the Advice and Consent of the Senate, to make Treaties, provided two thirds of the Senators present concur . . . ."); *U.S. v. Lara*, 541 U.S. 193, 200 (2004) ("[T]he 'central function of the Indian Commerce Clause,' we have said, 'is to provide Congress with plenary power to legislate in the field of Indian affairs.'") (citations omitted); *McClanahan v. Arizona State Tax Comm'n*, 411 U.S. 164, 172, n.7 (1973) ("The source of federal authority over Indian matters has been the subject of some confusion, but it is now generally recognized that the power derives from federal responsibility for regulating commerce with Indian tribes and for treaty making.") (citations omitted).[12]

---

[12] The movant appears to respond that the legislative intent of the Indian Commerce Clause and the Treaty Clause was to delegate to Congress the power to unilaterally regulate "*its own constituents'* trade with the Indians," but not to delegate to Congress the power to unilaterally modify "the indigenous governments' constituents' constitutional right of exclusive occupancy and domestic jurisdiction." (Dkt. No. 414 at 2 [emphasis in original].) However, the movant cites no controlling law in support of this proposition. If the movant is referring to Justice Thomas' strict interpretation of the Indian Commerce Clause and the Treaty Clause in *U.S. v. Lara*, 541 U.S. 193, 214-227 (2004), the movant is advised that those statements (made in a concurring opinion) are dicta. In any event, the Supreme Court has stated that the very organization of the United States and adoption of the Constitution resulted in "tribal rights to Indian lands [becoming] the exclusive province of federal law." *Oneida Indian Nation*, 414 U.S. at 667. Thus, rather than resulting from the constitutional enactment of the Indian Commerce Clause and the Treaty Clause, the bestowal of authority upon Congress (and the federal courts) over Indian matters resulted from the fact that "fee title to the lands occupied by Indians when colonists arrived became vested in the sovereign–first the discovering European nation and later

Third, the movant ignores the fact that, since at least 1789, federal courts have had jurisdiction over, *inter alia*, any cases in which the government is a plaintiff, as it is in this suit. *See* 28 U.S.C. § 1345, enacted in 1948 (2005); *U.S. v. Bank of New York & Trust Co.*, 296 U.S. 463, 479 (1936) (citing 28 U.S.C. § 41[1], enacted in 1911); *U.S. v. Sayward*, 160 U.S. 493, 494 (1895) (citing Judiciary Act of 1789, 1 Stat. 78, c. 20, § 11).

Similarly, I am unpersuaded by the movant's factual argument. In asking the Court to dismiss this action based on the affidavit of Kaianereh'ko:wa regarding the "Indigenous constitution of Kanion'ke:haka" (Dkt. No. 368 [adopting by reference Dkt. No. 364]), the movant fails to fully grasp the standard on a Rule 12(h)(3) motion. As explained above, on such a motion, the Court must decide whether a "federal question" is presented for review, assuming as true all factual allegations in plaintiffs' complaint. Granted, the Court *may*, in its broad discretion, consider evidence outside the pleadings, such as the affidavit in question, in order to resolve any "disputed jurisdictional fact issues." However, the Court is not *required* to consider such evidence unless the Court's resolution of those disputed jurisdictional fact issues may result in the dismissal of the complaint for lack of jurisdiction.

Here, assuming the movant has sufficiently "disputed" certain jurisdictional facts to create fact issues (e.g., whether the Indians who entered into the Treaty of 1796 were authorized by, or are the successors in interest to, the true owners of the land in question), the Court's resolution of those fact issues *need not* result in the dismissal of this action for lack of jurisdiction. This is because, as explained above, since at least 1789, federal courts have had jurisdiction over, *inter alia*, any cases in which the government is a plaintiff, as it is in this suit.

the original States and the United States." *Id*. at 667.

12

Because the movant's factual argument, even if true, could not result in dismissal of the claim of the United States,[13] I am not required to consider the affidavit submitted by the movant.

Even if I were required to consider the affidavit of Kaianereh'ko:wa, I would find it insufficient to rebut (or even "dispute") the jurisdictional facts alleged in the Indian plaintiffs' Amended Complaint,[14] which are assumed to be true for purposes of this motion, and which, in any event, are largely supported by evidence submitted in opposition to prior motions to dismiss in this case.[15]

In addition to being brief (amounting to less than a page once the caption is excluded), the affidavit submitted by the movant is often conclusory and vague.[16]  For example, the affidavit

---

[13]      In addition, it is questionable whether the movant's factual argument, even if true, could result in dismissal of the claim of the Indian plaintiffs, in light of Rules 19 and 20 of the Federal Rules of Civil Procedure, regarding joinder.

[14]      Again, as alluded to above, the movant's affidavit challenges only the legal right (or standing) of the Indian plaintiffs to bring their claim; it does not address the subject matter jurisdiction of this Court to adjudicate the claim brought by the United States.

[15]      (*See*, *e.g.*, Dkt. No. 63 [Appendix to Plaintiffs' Opposition to Defendants' Motions to Dismiss], Ex. 1 [Affid. of Lawrence Francis], Ex. 2 [Affid. of Debra Thomas], Ex. 3 [Affid. of Leonard Beaubien], Ex. 4 [Affid. of William Starna], Ex. 5 [historical document regarding Treaty of 1796]; Dkt. No. 157 [Opposition of St. Regis Mohawk Tribe to Motions to Dismiss], Attach. 1-3 [documents from Federal Register regarding St. Regis Tribe]; Dkt. No. 242, Ex. A [Affid. of M. Sharon Blackwell, Deputy Commissioner of BIA, addressing the federally recognized tribal status of the St. Regis Tribe].)

[16]      (*See*, *e.g.*, Dkt. No. 364 [Affid.], ¶¶ 3-4 ["I have reviewed the accompanying notice of objection and the *amicus brief* motion. . . .  They are constitutionally accurate."], ¶ 5 ["This action itself is treasonable and false in terms of the Kaianereh'ko:wa."], ¶ 6 ["The Kaianereh'ko:wa is in concert with the U.S. Constitution which affirms the Indian sovereignty of the Kanion'ke:haka."], ¶ 7 ["The difference is profound between the Indigenous law under the Kaianereh'ko:wa and the federal and state law that unconstitutionally is being applied to suppress the Kaianereh'ko:wa."], ¶ 10 ["This Federal Indian Governments' court case and the fraudulent Treaty to settle it is War by legal trickery upon Kanion'ke:haka:–it purports to sell the Land out from under the *Kaianereh'ko:wa* and thereby pretends to terminate its application to the

does not (1) specifically explain why the Indians who entered into the Treaty of 1796 were not authorized by the true owners of the lands in question to enter into that treaty, (2) specifically explain why current Indian plaintiffs are not the successors in interest regarding the lands in question and thus do not have a legal right to bring (or settle) any claim with regard to those lands, (3) quote any passage, or attach a sworn or certified copy, of the referenced "Indigenous constitution of the Kanion'ke:haka," or (4) describe the particular land allegedly covered by that constitution or even referenced by the movant.

As a result, the affidavit does not comply with the Second Circuit's requirement that, on a motion to dismiss, affidavits not be conclusory or vague. *See J.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004) (warning against relying on conclusory statements contained in affidavits on a motion to dismiss) (citations omitted); *Flores v. S. Peru Copper Corp.*, 343 F.3d 140, 146-147, 170-171 (2d Cir. 2003) (recognizing that vague and general affidavits constitute insufficient proof of foreign law on a motion to dismiss for lack of subject matter jurisdiction) (citations omitted). Nor does the affidavit comply with the Federal Rules of Civil Procedure, which require affidavits to "set forth such facts as would be admissible in evidence" and attach "[s]worn or certified copies of all papers or parts thereof referred to in [the] affidavit." *See* Fed. R. Civ. P. 56(e).[17]

_____

Land."].)

[17]     Where affidavits are submitted in support of a motion to dismiss for lack of subject matter jurisdiction, courts look to the requirements of Rule 56(e) of the Federal Rules of Civil Procedure for guidance in determining those affidavits' sufficiency. *See, e.g., Goode v. STS Loan & Mgmt.*, Civ. 2004-0999, 2005 U.S. Dist. LEXIS 566, *5-6 (D. Md. Jan. 14, 2005) (denying motion to dismiss because "Rule 56[e] requires more than a bald assertion that the affiant has 'personal knowledge' and is 'competent' to testify"), *accord, Serrano v. 900 5th Ave. Corp.*, 4 F. Supp.2d 315, 316 (S.D.N.Y. 1998) (denying motion to dismiss).

In addition, the affidavit does not set forth the identity or qualifications of the affiant sufficient to make him or her competent to testify to the matters stated in the affidavit.[18]  For example, the affidavit does not state the affiant's educational or employment background, relevant scholarly publications, or the specifics of the cases in which he or she previously testified as an "expert witness" (case names, case numbers, courts, dates of testimony, or even subject matter of the testimony).  As a result, the affidavit fails to comply with the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 56(e) ("Supporting . . . affidavits shall . . . show affirmatively that the affiant is competent to testify to the matters stated therein.").

The remaining assertions in the affidavit, even construed liberally, contain syntax errors, undefined terms and/or sweeping notions, which render those assertions practically nonsensical.[19]

Because I find that the non-movants have met their burden to show by a preponderance of the evidence that this Court has subject matter jurisdiction over this matter, I recommend that the movant's motion under Rule 12(h)(3) be denied.

---

[18]     (*See* Dkt. No. 364 [Affid.], ¶ 1 ["I, Tekarontakem of Kanienkeh, MAKE OATH AND SAY: . . . I am knowledgeable in the *Kaianereh'ko:wa* and previously have testified court [sic] as an 'expert witness.'"].)

[19]     (*See* Dkt. No. 364 [Affid.], ¶ 2 ["It is the Indigenous constitution of the Kanion'ke:haka which is a constitutionally Indigenous government organized under, and subject to it."], ¶ 8 ["Metaphorically and essentially the Kaianereh'ko:wa is ∇:–Leadership is subject to the power of the People which is subject to Nature."], ¶ 9 ["Federal Indian Government in contrast is ∆:–Nature is subject to the power of the People which is subject to Leadership."], ¶ 11 ["The *Kaianereh'ko:wa* gave birth to the rule of law in America and its continuing force and effect will, if not suppressed, help America give life under the rule of law instead of death under *force majeure* to the rest of the world."].)

**D.      Miscellaneous Arguments by Non-Movants**

Having described the grounds on which my conclusion is based, it is worth noting the grounds on which my conclusion is not based.  In addition to correctly relying on the Indian Commerce Clause, the Mohawk Nation Council of Chiefs, the St. Regis Mohawk Tribe and the Mohawk Council of Akwesasne ("Plaintiffs") argue that the movant's motion should be denied because (1) "the [movant], as [a] nonpart[y], may not challenge this Court's jurisdiction," and (2) "[this motion] is untimely because it implicitly asks this Court to reconsider beyond the 10-day limit of Local Rule 7(g), the prior rulings that this Court has jurisdiction over this action and that the [movant's] arguments lack merit."  (Dkt. No. 402 [Part 1] at 1.)  These two arguments are without merit.

With regard to the first argument, a challenge may be made to the Court's subject matter jurisdiction under Rule 12(h)(3) by a non-party.  *See* Fed. R. Civ. P. 12(h)(3) (analysis triggered "by suggestion of the parties *or otherwise*") [emphasis added]; *New York v. Waterfront Airways, Inc.*, 620 F. Supp. 411, 413 (S.D.N.Y. 1985) ("Because this is a challenge to the court's subject matter jurisdiction, Fed. R. Civ. P. 12(h)(3) permits it to be brought to the court's attention by persons other than the parties to the action."); *Cal. Dep't of Toxic Substances Control v. Commercial Realty Projects, Inc.*, 309 F.3d 1113, 1120 (9th Cir. 2002) (recognizing that "a non-party could challenge a district court's lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(h)(3).").[20]

---

[20]      This interpretation of Rule 12(h)(3) makes sense, considering that a court may itself assert that subject matter jurisdiction is lacking–whether or not upon a suggestion by a nonparty.  *See* 5C Wright & Miller, *Federal Practice and Procedure* § 1393 at 545 (Thompson 3d ed. 2004) ("[I]t is now well-settled that a lack of subject matter jurisdiction may be asserted by the federal court itself . . . .") (citing cases).

16

With regard to the second argument, a motion under Fed. R. Civ. P. 12(h)(3) may not be foreclosed on the basis of untimeliness. *See Tongkook America, Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 786 (2d Cir. 1994) ("[S]ubject matter jurisdiction cannot be waived and the issue can be raised at any time in the course of the litigation [under Fed. R. Civ. P. 12(h)(3)]."), *accord*, *Cayuga Indian Nation v. Cuomo*, 80-CV-930, 1999 U.S. Dist. LEXIS 10579, *21-23 (N.D.N.Y. June 30, 1999) (McCurn, D.J.), *Parker v. Fogg*, 85-CV-177, 1994 WL 49696, *9 & n.18 (N.D.N.Y. Feb. 17, 1994) (McCurn, D.J.); 5C Wright & Miller, *Federal Practice and Procedure* § 1393 at 532 (Thompson 3d ed. 2004) ("[F]ederal courts have made it clear beyond peradventure that . . . it [is] impossible to foreclose the assertion of this defense by the passage of time . . . .") (citing cases). In addition, Plaintiffs' assumption (in this second argument) that the current motion is "implicitly" a motion for reconsideration of Judge McCurn's prior rulings regarding jurisdiction is misplaced (Dkt. No. 402 [Mem. of Law] at 3-5), since Judge McCurn's ruling need not be "reconsidered" to resolve this motion. This is because the law-of-the-case doctrine is "discretionary, not mandatory," and need not be followed by a court when addressing a Rule 12(h)(3) motion. *See Rezzonico v. H&R Block, Inc.*, 182 F.3d 144, 149 (2d Cir. 1999) ("[R]eexamination of a question regarding our jurisdiction is especially important whenever there is reason to believe that it might be lacking") (citing, *inter alia*, Fed. R. Civ. P. 12[h][3]).

Similarly, the United States raises two arguments that I reject: (1) that the Court is somehow bound by the conclusion regarding subject matter jurisdiction reached by Judge McCurn in his Memorandum-Decision and Order of May 30, 2001 (Dkt. No. 200 at 33); and (2) that the movant's motion should be denied because Judge McCurn, in his February 18, 2005 Order (Dkt. No. 373), rejected the movant's argument as lacking merit. (Dkt. No. 398 at 3-4.)

17

With regard to the first argument, Judge McCurn's prior ruling is not necessarily determinative in this Rule 12(h)(3) motion.  As described above, the law-of-the-case doctrine is "discretionary, not mandatory," and need not be followed by a court when addressing a Rule 12(h)(3) motion.  *See Rezzonico*, 182 F.3d at 149.

Finally, with regard to the second argument, I first find that, contrary to the movant's claim, Judge McCurn rejected their argument with sufficient specificity in his February 18, 2005, Order.  (Dkt. No. 414 at 4.)  However, Judge McCurn rejected that argument in the context of an objection to a rejection order, on which objection the movant had the burden.  (Dkt. No. 364 [objecting to Dkt. No. 361].)  In the current Rule 12(h)(3) motion, the non-movants have the burden.  In short, the fact that the movant's argument was not sufficient to carry its burden on an objection to a rejection order does not itself mean that the non-movants have carried their burden on a Rule 12(h)(3) motion.  Rather, it is for the reasons discussed earlier in this Report-Recommendation that the non-movants have carried their burden.

**ACCORDINGLY**, it is

**RECOMMENDED** that the Rule 12(h)(3) motion to dismiss filed by non-party Kanion'ke:haka Kaianereh'ko:wa Kanon'ses:neh be **DENIED**; and it is further

**ORDERED** that the Clerk serve a copy of this Report and Recommendation on the parties, on Kanion'ke:haka Kaianereh'ko:wa Kanon'ses:neh, and on the Movant-Intervenor Mohawk Council of Kahnawá:ke.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties and

Kanion'ke:haka Kaianereh'ko:wa Kanon'ses:neh[21] have ten (10) days within which to file written

objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE**

**APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (*citing Small v.*

*Secretary of Health and Human Services*, 892 F.2d 15 [2d Cir. 1989]); 28 U.S.C. § 636(b)(1);

Fed. R. Civ. P. 72, 6(a), 6(e).

Dated:  May 18, 2005
　　　　 Syracuse, New York

_____
George H. Lowe
United States Magistrate Judge

---

[21]    *See Litton Indus., Inc. v. Lehman Bros Kuhn Loeb Inc.*, 125 F.R.D. 51, 52-55
(S.D.N.Y. 1989) (considering objection by non-party to order of magistrate judge); *Rodonich v.
House Wreckers Union Local 95 of Laborers Int'l Union of N. Am.*, 82 Civ. 5583, 1983 U.S.
Dist. LEXIS 14681, *1-9 (S.D.N.Y. Aug. 12, 1983) (considering objection by non-party to order
of magistrate judge); *Stacey v. Caterpillar, Inc.*, 901 F. Supp. 244, 246 (E.D. Ky. 1995)
(affording a non-party the right to object to a magistrate's report-recommendation because that
non-party "clearly has an interest in the outcome of this . . . decision").