UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

THE CANADIAN ST. REGIS BAND OF MOHAWK
INDIANS, *et al.*,

|  |  |
|---|---|
| Plaintiffs, | 5:82-CV-0783 (Lead) |
|  | 5:82-CV-1114 (Member) |
| v. | 5:89-CV-0829 (Member) |

THE STATE OF NEW YORK, *et al.*,

Defendants.

_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| HOBBS STRAUS DEAN & WALKER<br>Attorneys for Plaintiff St. Regis Mohawk<br>  Tribe, by the St. Regis Mohawk Tribal Council<br>  (5:89-CV-829 & 5:82-CV-783)<br>2120 L Street, N.W., Suite 700<br>Washington, DC 20037 | MARSHA K. SCHMIDT, ESQ.<br>MICHAEL L. ROY, ESQ. |
| SONOSKY CHAMBERS LAW FIRM<br>Attorneys for Plaintiffs Canadian St. Regis Band of<br>  Mohawk Indians (5:82-CV-1114 & 5:82-CV-783)<br>1424 K Street, N.W., Suite 600<br>Washington, DC 20005 | JAMES T. MEGGESTO, ESQ.<br>ARTHUR LAZARUS, ESQ. |
| INDIAN LAW RESOURCE CENTER<br>Attorneys for Plaintiffs People of Longhouse at<br>  Akwesasne by Mohawk Nation Counsel of Chiefs<br>  (5:89-CV-829)<br>601 E. Street, S.E.<br>Washington, DC 20003 | ALEXANDRA C. PAGE, ESQ. |
| ALEXANDER, BERKEY, WILLIAMS &<br>  WEATHERS, LLP<br>Attorneys for Plaintiffs People of Longhouse at<br>  Akwesasne by Mohawk Nation Counsel of Chiefs<br>  (5:89-CV-829)<br>2000 Center Street, Suite 308<br>Berkeley, CA 94704 | CURTIS G. BERKEY, ESQ. |

U.S. DEPARTMENT OF JUSTICE                        JAMES B. COONEY, ESQ.
Environment & Natural Resources Division
Indian Resources Section
Attorney for Plaintiff-Intervenor United States of America
 (5:89-CV-829, 5:82-CV-783 & 5:82-CV-1114)
L'Efant Plaza Station, P.O. Box 44378
Washington, DC 20026-4378


U.S. DEPARTMENT OF INTERIOR                       DAVID MORAN, ESQ.
 OFFICE OF THE SOLICITOR
1849 C Street, N.W.
Washington, DC 20240


HISCOCK & BARCLAY, LLP                            JUDITH M. SAYLES, ESQ.
Attorneys for Defendants County of St. Lawrence,
 County of Franklin, Village of Massena, Town of
 Massena, Town of Bombay, Town and Village of
 Fort Covington, Key Bank of Northern New York, N.A.,
 Nationwide Mutual Insurance Co., Niagara Mohawk
 Power Co., Marine Midland Properties Corporation,
 Walsh Realty Corporation, and Canadian National
 Railways (5:89-CV-829, 5:82-CV-783 & 5:82-CV-1114)
P.O. Box 4878
Syracuse, NY 13221-4878


HON. ELIOT L. SPITZER                             DAVID B. ROBERTS, ESQ.
Attorney General for the State of New York        CHRISTOPHER W. HALL, ESQ.
Attorney for State Defendants                     Assistant Attorneys General
 (5:89-CV-829, 82-CV-783 & 82-CV-1114)
The Capitol
Albany, NY 12224


MANATT, PHELPS & PHILLIPS, LLP                    O. PETER SHERWOOD, ESQ.
Attorneys for Defendant New York Power Authority
 (89-CV-829 & 82-CV-1114)
1675 Broadway, 27th Floor
New York, NY 10019


SNELL & WILMER, LLP                               MARCIE MONTGOMERY, ESQ.
Attorneys for Movant-Intervenor                   HEIDE STAUDENMAIER, ESQ.
 Mohawk Council of Kahnawá:ke
One Arizona Center
Phoenix, AZ 85004


2

GEORGE H. LOWE, United States Magistrate Judge

## REPORT-RECOMMENDATION

On March 30, 2005, non-party Mohawk Council of Kahnawá:ke ("Movant") filed a motion to intervene under Rule 24 of the Federal Rules of Civil Procedure. (Dkt. No. 380.)  In accordance with 28 U.S.C. § 636, Rule 72(b) of the Federal Rules of Civil Procedure, and Rule 72.1 of the Local Rules of Practice for this Court, the Honorable Neal P. McCurn, Senior United States District Judge, referred this matter to me for a Report-Recommendation.  For the reasons that follow, I recommend that the Movant's motion be denied.

### TABLE OF CONTENTS

I.    INTERVENTION OF RIGHT..................................................................................4
      A.    Whether the Application Is Timely..........................................................5
            1.    Overview of Law............................................................................5
            2.    Analysis...........................................................................................7
                  a.    Length of Time.....................................................................7
                  b.    Prejudice to Existing Parties.............................................13
                  c.    Prejudice to Movant............................................................18
                  d.    Unusual Circumstances......................................................26
      B.    Whether the Applicant Claims an Interest Relating to the Property or the
            Subject of the Action.................................................................................30
            1.    Overview of Law..........................................................................30
            2.    Analysis.........................................................................................31
      C.    Whether the Applicant Is So Situated that the Disposition of the Action May
            Impair or Impede the Applicant's Ability to Protect Its Interest........................34
            1.    Overview of Law..........................................................................34
            2.    Analysis.........................................................................................36
      D.    Whether the Applicant's Interest Is Adequately Represented by the Parties.....38
            1.    Overview of Law..........................................................................38
            2.    Analysis.........................................................................................39
II.   PERMISSIVE INTERVENTION.......................................................................44
      A.    Whether the Application Is Timely........................................................45
      B.    Whether the Applicant's Claim and the Main Action Have a Question of Law
            or Fact in Common....................................................................................45
      C.    Whether the Intervention Will Unduly Delay or Prejudice the Adjudication of
            the Rights of the Original Parties.............................................................47

## DISCUSSION

Rule 24 of the Federal Rules of Civil Procedure provides two avenues for intervention: intervention as of right and intervention by permission.  Fed. R. Civ. P. 24

## I.      INTERVENTION OF RIGHT

Rule 24 provides, in pertinent part:

> **(a)  Intervention of Right.**  Upon timely application anyone shall be permitted to intervene in an action: . . . when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed. R. Civ. P. 24(a)(2).  Thus, there are four requirements for intervention as of right: (a) a showing that the application is "timely"; (b) a showing that "the applicant claims an interest relating to the property or transaction which is the subject of the action;" (c) a showing that "the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest;" and (d) a showing that "the applicant's interest is [not] adequately represented by existing parties."  Fed. R. Civ. P. 24(a)(2).  "Failure to establish *any one* of these elements is a sufficient ground to deny the application."  *Farmland Dairies v. Comm'r of N.Y. State Dep't of Agric. and Mkts.*, 847 F.2d 1038, 1043 (2d Cir. 1988) (citing *U.S. v. N.Y.*, 820 F.2d 554, 556 [2d Cir. 1987]).[1]  Indeed, a court *must* deny the application for intervention as of right if the applicant has failed to establish one of these four

---

[1]      *See also D'Amato v. Deutsche Bank*, 236 F.3d 78, 84 (2d Cir. 2001), *Holocaust Victim Assets Litigation v. Swiss Bankers Ass'n*, 225 F.3d 191, 197-98 (2d Cir. 2000); *Catanzano v. Wing*, 103 F.3d 223, 232 (2d Cir. 1996).

4

elements.[2]

A.      Whether the Application Is Timely

1.      Overview of Law

Rule 24(a) states, in pertinent part, that anyone shall be permitted to intervene in an action

"[u]pon timely application."  Fed. R. Civ. P. 24(a).  "The determination of the timeliness of an

application to intervene is committed to the sound discretion of the trial court . . . ."  *Farmland*

*Dairies*, 847 F.2d at 1043-44 (citations omitted).  "Of course, that discretion is not unfettered.

An application's timeliness must be evaluated against the totality of the circumstances before the

court."  *Id.* at 1044 (citations omitted).[3]

"While not necessarily an exhaustive enumeration, the following factors should guide the

district court's determination: (1) the length of time the applicant knew or should have known of

his interest before making the motion; (2) prejudice to existing parties resulting from the

_____

[2]      *See U.S. v. Pitney Bowes, Inc.*, 25 F.3d 66, 70 (2d Cir. 1994) ("The intervention
application will be denied unless all four requirements are met."); *Washington Elec. Coop. v.
Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 96 (2d Cir. 1990) ("All four parts of the test must
be satisfied to qualify for intervention as of right.") (citation omitted); *Farmland Dairies*, 847
F.2d at 1043 ("[A]n untimely motion to intervene must be denied.") (citations omitted).
        In making its argument for intervention as of right, the Movant cites *Lincoln Gen. Ins.
Co. v. Aisha's Learning Ctr.*, 3:04-CV-0063, 2004 WL 2533575, *3-4 (N.D. Tex. Nov. 9, 2004)
in support of the proposition that "a court may rule against the intervenor as to the first factor of
timeliness, but still grant intervention."  (Dkt. No. 411 at 18.)  Apart from being non-binding
authority, *Lincoln* (conditionally) granted permissive intervention, not intervention as of right.

[3]      *See also NAACP v. N.Y.*, 413 U.S. 345, 265-66 (1973) ("Although the point to
which the suit has progressed is one factor in the determination of timeliness, it is not solely
dispositive."); *U.S. v. N.Y.*, 820 F.2d at 557 ("[A] lapse of time is only one of several factors to
be considered when deciding timeliness under Rule 24[a][2], and it is incorrect to adopt a *per se*
rule focused solely on that factor."); *U.S. v. Yonkers Bd. of Educ.*, 801 F.3d 593, 595 (2d Cir.
1986) ("The district court is not given free rein: it must not consider merely the length of time the
litigation or proceeding has been pending, but should base its determination upon all of the
circumstances of the case.").

applicant's delay; (3) prejudice to the applicant if the motion is denied; and (4) the presence of unusual circumstances militating for or against a finding of timeliness."  *Id.* (citation omitted).

While a district court may not rely exclusively on the first such factor, it may rely "primarily" on that factor.  *See*, *e.g.*, *D'Amato v. Deutsche Bank*, 236 F.3d 78, 84 (2d Cir. 2001) (affirming the denial of a motion to intervene, where "the District Court focused primarily on the first factor, the length of appellant's notice of his interest in the action.").  "Among the most important factors in a timeliness decision is 'the length of time the applicant knew or should have known of his interest before making the motion.'"  *Catanzano v. Wing*, 103 F.3d 223, 232 (2d Cir. 1996) (affirming denial of motion to intervene on ground of untimeliness) (citation omitted).[4]

This "should have known" standard is one of *reasonablenes*s, that is, the standard involves determining when a person would have known of his alleged interest in the litigation if he had exercised reasonable care.  *See Goldwasser v. Smith Corona Corp.*, 91-CV-21, 1993 U.S. Dist. LEXIS 11182, *8 (D. Conn. Aug. 6, 1993) ("[T]he court finds that [the applicant] knew or reasonably should have known of her alleged interest in this litigation long before she filed this motion."), *aff'd without opinion*, 26 F.3d 137 (Fed. Cir. 1994); *U.S. v. Nassau County*, 77-CV-1881, 1990 U.S. Dist. LEXIS 13790, *5-6 (E.D.N.Y. May 22, 1990) (first factor considered in timeliness prong involves determining when the would-be intervenor "reasonably should have known of their interest"); *Neuman v. Blue Cross*, 55 B.R. 707, 709 (S.D.N.Y. 1985) (first factor

---

[4]       *See also Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 182 (2d Cir. 2001) (affirming denial of motion to intervene on ground of untimeliness); *In re Bank of N.Y. Derivative Litig.*, 173 F. Supp.2d 193, 200 (S.D.N.Y. 2001) (denying motion to intervene on ground of untimeliness).

considered in timeliness prong involves determining when the proposed intervenor "should have reasonably known of his interest").[5]

### 2.    Analysis

#### a.    Length of Time

In arguing that the length-of-time factor weighs in favor of a finding of timeliness, the Movant advances essentially the following three arguments: (1) no uniform timetable exists, under the controlling case law, dictating what length of time is "timely"; (2) the Movant has "credible explanations" for its delay in attempting to intervene in this action; and (3) even if the length of time in question were "untimely," this factor would not be dispositive.  (Dkt. No. 380 at 10-12; Dkt. No. 411 at 7-10.)  In response, the parties argue mainly that the Movant's delay was not "reasonable" under the circumstances.  (Dkt. No. 395 at 7-10; Dkt. No. 396 at 3-5; Dkt. No. 397 at 3-7; Dkt. No. 400 at 5-8; Dkt. No. 401 at 2-5.)

---

[5]    A brief survey of the law outside the Second Circuit suggests that most, if not all, of the other circuits employ this reasonable-care standard.  *See*, *e.g.*, *Effjohn Intern. Cruise Holding, Inc. v. A&L Sales, Inc.*, 346 F.2d 552, 561 (5th Cir. 2003) (considering "the movant's failure to apply for intervention as soon as it knew or reasonably should have known of its interests") (internal quotation and citation omitted); *S. Ohio Corr. Facility v. Tate*, No. 00-3454, 2001 WL 1667267, *10 (6th Cir. Dec. 26, 2001) (considering when the proposed intervenor "knew or reasonably should have known of their interest") (citation omitted); *People Who Care v. Rockboard Bd. of Educ.*, 68 F.3d 172, 175 (7th Cir. 1995) ("The timeliness factor is essentially a reasonableness inquiry, requiring potential intervenors to be reasonably diligent in learning of a suit that might affect their rights . . . ."); *Banco Popular de Puerto Rico v. Greenblatt*, 964 F.2d 1227, 1231 (1st Cir. 1992) (considering when the would-be intervenor "knew or reasonably should have known that its interest was imperilled") (citations omitted); *U.S. v. Jefferson County*, 720 F.2d 1511, 1516 (11th Cir. 1983) (considering when the would-be intervenor "knew or reasonably should have known of his interest").

A careful review of the evidence supports the following chronology of relevant events:

1.      On or about December 7, 1978, Claudia Sunday, Chief of the Mohawk Nation, signed a two-page "Attorney's Contract" between Sonosky, Chambers & Sachse and the Caughnawaga and St. Regis Bands of the Mohawk Nation.  (Dkt. No. 396, Ex. A.)  The Attorney's Contract provided, among other things, that (1) "the Attorneys are retained in an attempt to settle the [land] claims through negotiations and shall not be required to prosecute the claim in any court," and (2) "[t]his contact shall be for a term of three years from the effective date [i.e., October 25, 1978] or until the obligation under this contract is completed, whichever is sooner."  (*Id.*)

2.      Approximately one day later, on or about December 8, 1978, the Movant entered into a one-page "Band Council Resolution" providing that (1) "the Mohawk Council of Kanawake hereby appoint Claudia Sunday, Chief of the Mohawk Nation, as the representative to execute the contract regarding the Attorney's Agreement – American Claim, on behalf of the Caughnawaga Band of Indians," and that (2) "the Mohawk Council of Kanawake accept the obligations set forth in the said Attorney's Agreement."  (Dkt. No. 380, Ex. 2A.)

3.      Approximately four days later, on or about December 12, 1978, Harry R. Sachse, Esq., of the law firm of Sonosky, Chambers & Sachse, signed the "Attorney's Contract" that had been signed earlier by Chief Sunday.  (Dkt. No. 396, Ex. A.)

4.      Between December 12, 1978, and July 27, 1982, Mr. Sachse communicated at least twice in writing with the Movant regarding the land claims.  Specifically,

8

a.     On or about May 4, 1979, Mr. Sachse sent a four-page memorandum to

the "St. Regis and Caughnawaga Bands of Mohawk Indians" reporting on

his May 2, 1979, meeting with a representative of the United States

Interior Department regarding the proposed land claim.  (Dkt. No. 395, Ex.

1; Dkt. No. 411, Ex. 5, Attach. A thereto.); and

b.     On or about October 4, 1979, Mr. Sachse sent a four-page letter to Mr.

Alex David, Mohawk Nation Representative, "review[ing] the actions we

have taken so far in asserting the right of the Canadian St. Regis and

Kanawake Bands to participate in any settlement of the New York St.

Regis land claims."  (Dkt. No. 411, Ex. 7, Attach. A thereto.)

5.     On July 27, 1982, this action was filed.  (Dkt. No. 1.)

6.     On December 12, 2002, Christine Zachary Deom, Esq., acting on behalf of the

Movant, "contacted the law firm of Sonosky, Chambers, Sachse, Endreson & Perry, LLP and

spoke with Mr. Harry Sachse concerning his representation of Kahnawá:ke in the Land Claim

Litigation."  Ms. Deom "asked for a history of [Mr. Sachse's] representation of Kahnawá:ke and

he indicated that he represented Kahnawá:ke and Akwesáhsne on a contingency basis for a

period of four to five years from 1978 to 1982.  He spoke generally about the difficulties of this

particular case and the problems of changes in tribal government."  (Dkt. No. 411, Ex. 7, ¶¶ 5-6;

Dkt. No. 380, Ex. 3, ¶ 19.)

7.     On April 29, 2003, Ms. Deom "wrote to Mr. Sachse and requested a copy of the

firm's termination letter or other communications pertinent to the representation of Kahnawá:ke

or some indication that such termination of services to Kahnawá:ke had been effected"; on May

28, 2003, Ms. Deom "received a letter from Mr. James T. Maggesto, another attorney at

Sonosky, Chambers, Sachse, Endreson & Perry, LLP . . . .  Mr. Meggesto stated that no letter of

termination of legal services concerning Kahnawá:ke was found and that it was Mr. Sachse's

recollection that the contract simply expired."  (Dkt. No. 411, Ex. 7, ¶¶ 7-9; Dkt. No. 380, Ex. 3,

¶ 19.)

       8.      Starting in May of 2003, the Movant "requested meetings with the other Mohawk

parties about the Land Claim Litigation"; however, these requests apparently were denied.  (Dkt.

No. 411, Ex. 7, ¶ 11; Dkt. No. 380, Ex. 3, ¶ 22.)

       9.      On or about October 29, 2004, the Movant sent to the current Mohawk Plaintiffs a

two-page letter attaching a 14-page document entitled "Position Paper: Kahnawake Entitlement

in Mohawk Land Claim Litigation."  (Dkt. No. 411, Ex. 7, ¶ 11; Dkt. No. 396, Ex. B.)

      10.     In November of 2004, two meetings were held between the Movant and the other

Mohawk parties about the current land claim litigation; in these meetings, the Movant's "position

regarding its continued representation in the Land Claim by Akwesahsne was not well received."

(Dkt. No. 380, Ex. 3, ¶ 23.)[6]

      11.     On or about February 1, 2005, the Movant received a two-page letter from the

Mohawk Council of Akwesasne stating, among other things, that

---

      [6]     The parties apparently disagree regarding whether the Akwesahsne expressly
stated in the November 2004 meetings that the Akwesahsne did not "represent[] [the Movant's]
interests in the Land Claim Litigation."  (*Compare* Dkt. No. 411, Ex. 7, ¶¶ 11-12 [by the
Movant's affiant, who apparently was not present during those meetings] *with* Dkt. No. 395, Ex.
4, ¶ 5 [by the Plaintiff St. Regis Mohawk Tribe's affiant, who apparently was present during
those meetings].)

[for] reasons of its own, which we respect, Kahnawake withdrew from the [potential court] action, and therefore were not part of any ensuing negotiations. . . .  Akwesasne's proposed settlement with New York and the United States resolves *Akwesasne's* claims.  We have been careful to avoid affecting any other community's rights or claims. . . . In our view, Kahnawake is not entitled to share in, nor to impede, Akwesasne's settlement. . . .

(Dkt. No. 380, Ex. 4.)

12.     On March 30, 2005, the Movant filed its motion to intervene.  (Dkt. No. 380.)

The "credible explanations" the Movant offers for its delay in seeking intervention consist mainly of the fact that "[i]t was not until very recently that [the Movant] learned its interests were not represented nor protected by the Akwesáhsne."  (Dkt. No. 380 at 10-11.)  The problem with this explanation is that, even if it were deemed credible, it would go to the issue of when the Movant *actually knew* of its interest in this litigation, not to the issue of when the Movant *should have known* of its interest in this litigation.

The remaining explanations the Movant offers in its papers do go to the issue of when the Movant should have known of its interest–i.e., (1) the Movant's reading of the Band Council Resolution to mean that the Akwesasne would at all times protect the Movant's interests with regard to the land claims, (2) the lack of any formal termination letter from the Sonosky Chambers law firm, and (3) the Mohawk Plaintiffs' apparent reluctance to talk with the Movant between May 2003 and November 2004.  (*Id.*)  However, the problem with these explanations is that they are not *reasonable*.

For example, how could a reasonable person, (1) enter into a Resolution agreeing to be bound by an "Attorney's Agreement" without assuring itself that it understood the terms of that Agreement, (2) interpret the express and narrow terms of a Resolution so broadly and for such a

11

long time without questioning that broad interpretation, and (3) construe an internal Resolution as binding third parties (i.e., the Sonosky Chambers law firm and the current Mohawk Plaintiffs) who are not signatories to the Resolution?  I find that a reasonable person would not do these things.

In oral argument, the Movant relied on two other arguments to explain its delay: (1) the Movant is a group of unsophisticated laypersons who are not knowledgeable in matters of American law; and (2) the Movant is a complex political group that is slow to act.  The first argument fails because the Movant is presumed to understand the plain meaning of the words it uses in its own Resolution; at the very least, the first argument supports a conclusion that the Movant many years ago should have retained, and relied on, separate counsel, as it has apparently done since 2001 when it hired Ms. Deom.  (Dkt. No. 411, Ex. 7, ¶ 2.)  The second argument fails because, even if the Movant were a complex political group that is slow to act, that fact would not explain the long periods of time in which it completely *failed* to act.

Also in oral argument, the Movant relied on the Affidavit of Lawrence Francis as saying that the Akwesasne understood, through the Movant's Resolution, that it was protecting the Movant's interests.  (Dkt. No. 380, Ex. 2, ¶ 17 ["It was understood that Akwesáhsne, through the Resolution mandate, was representing Kahnawá:ke's interests."].)  The parties question Mr. Francis's credibility, since he is apparently employed by the Movant.  (Dkt. No. 380, Ex. 2, ¶ 3.)  However, even if deemed credible, Mr. Francis's testimony would be unavailing.  Assuming Mr. Francis meant to say that this alleged understanding was held by *the Akwesáhsne* (and not simply the Kahnawá:ke), the sole basis for this understanding was the Resolution, which (as described above) does not reasonably support such an understanding.

Finally, in its motion papers and during oral argument, the Movant argued that, while it has introduced evidence to meet its burden with regard to this length-of-time factor, the parties have submitted no evidence in rebuttal. (*See*, *e.g.*, Dkt. No. 411 at 18.) This argument is factually inaccurate, since the parties clearly submitted relevant documentary and testamentary evidence. (*See*, *e.g.*, Dkt. No. 395, Exs. 1 and 4; Dkt. No. 396, Exs. A and B.) In any event, the Movant's own evidence undermines its position. (*See*, *e.g.*, Dkt. No. 380, Ex. 2A; Dkt. No. 380, Ex. 3; Dkt. No. 380, Ex. 4; Dkt. No. 411, Ex. 5, Attach. A thereto; Dkt. No. 411, Ex. 7, and Attach. A thereto.)

In short, I find that the Movant *should have known* of its interest in this litigation in August of 1982--after the Movant's contract with Sonosky Chambers had expired, after the written communications from Mr. Sachse had stopped coming, and after this litigation had been filed. Moreover, I find that the Movant *actually did know* of its interest in this litigation, at the very latest, in November 2003–after Mr. Sachse informed the Movant's counsel, Ms. Deom, that the Sonosky Chambers law firm had long ago stopped representing the Movant, and after the Movant's "position regarding its continued representation in the Land Claim by Akwesahsne was not well received" by the Mohawk Plaintiffs. The Movant's lengthy delay in filing its motion to intervene is clearly unreasonable.

I therefore conclude that the-length-of-time factor weighs against a finding of timeliness.

### b.      Prejudice to Existing Parties

In arguing that the prejudice-to-the-existing-parties factor weighs in favor of a finding of timeliness, the Movant advances essentially the following three arguments: (1) no prejudice exists because the Court has not yet ruled on the merits of this land claim; (2) intervention would

13

not inject additional issues that increase the case's complexity because the Movant, in its proposed complaint in invention, asserts the same allegations as asserted by the current Mohawk Plaintiffs, and this case has not commenced the discovery phase; and (3) intervention would not disrupt settlement because the Movant does not oppose the idea of settlement, only a settlement that does not involve the Movant.  (Dkt. No. 380 at 12-17.)

The parties essentially respond as follows: (1) intervention would increase the case's complexity because the Court has already ruled on several motions (including dispositive motions) and the parties have begun exchanging discovery; and (2) intervention would disrupt settlement because (a) the proposed settlement in question has been executed by all the parties and is simply awaiting legislative approval, and the Movant opposes that settlement, and (b) the parties are not going to willingly permit the Movant to participate in the proposed settlement (either because they do not believe the Movant to have any rights under the Treaty of 1796, or because they consider the settlement to be the reward of negotiations since June 2003 and indeed of hard work since the filing of this lawsuit in 1982).  (Dkt. No. 395 at 10-13; Dkt. No. 396 at 5-7; Dkt. No. 397 at 7-9; Dkt. No. 400 at 5-8; Dkt. No. 401 at 5-6.)

The Movant essentially replies as follows: (1) the facts raised by the parties (i.e., the existence of a proposed settlement, the fact that discovery has recently commenced, and the fact that the Court has already ruled on dispositive motions) are not determinative in deciding whether the parties would be prejudiced by intervention, especially considering that the proposed settlement that the intervention jeopardizes is not occurring at an advanced stage of the litigation, the discovery that has occurred has not been substantive, and the rulings that have occurred have not been on the merits; (2) the relevant type of "prejudice" at issue is prejudice to the parties

14

resulting from the applicant's delay in seeking intervention, and here any delay in the case either would not prejudice the parties or would not be caused by intervention but rather by the United States Supreme Court's decision in *City of Sherrill v. Oneida Indian Nation*, 125 S. Ct. 1478 (2005); (3) while intervention may somewhat complicate the case, it would not "radically alter the scope [of the case] to create a much different suit," which is the relevant issue--for example, intervention will not cause the settlement negotiations' process to start over, since the Movant has the same possessory interests in the St. Regis lands as the Mohawk Plaintiffs; and (4) indeed, the parties would likely be prejudiced (through exposure to duplicative litigation, etc.) if intervention were not allowed.  (Dkt. No. 411 at 10-15.)

After carefully considering the above arguments and the case law cited in support of them, I conclude that the prejudice-to-the-parties factor weighs against a finding of timeliness.

As described above, in addressing this prejudice factor, the parties and the Movant focus much of their discussion on the status of a proposed settlement.  However, in light of the Second Circuit's recent decision in *Cayuga Indian Nation of New York v. Pataki*,[7] I have serious doubts as to whether the proposed settlement remains viable.  At a minimum, I presume that further settlement efforts will be put on hold pending possible appellate review of the *Cayuga Indian Nation of New York* decision.  Under these circumstances, and for purposes of the present motion, I therefore conclude that intervention would not prejudice the existing parties *by disrupting the settlement process.*

Nevertheless, I find that, if the Movant's motion to intervene were granted, the Movant's delay in bringing that motion would prejudice the existing parties by radically changing the

_____

[7]       No. 02-6111, 2005 WL 1514245 (2d Cir. June 28, 2005).

nature of the action.  *See Washington Elec. Coop. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d

92, 97 (2d Cir. 1990) (affirming denial of motion to intervene that would have "radically"

changed action by adding a plaintiff and increasing the recovery sought).[8]  Such a radical change

is not permitted; rather, "[i]ntervenors must take the pleadings in a case as they find them."

*Washington Elec.*, 922 F.2d at 97 (citations omitted).  "Intervention cannot be used as a means to

inject collateral issues into an existing action."  *Id*. (citations omitted); *N.Y. News, Inc. v. Kheel*,

972 F.32d 482, 486 (2d Cir. 1992); *U.S. v. City of N.Y.*, 198 F.3d 360, 365 (2d Cir. 1999)

(citations omitted).

Apparently to avoid the application of this rule, the Movant argues that its proposed

complaint in intervention asserts the same allegations as asserted by the current Mohawk

Plaintiffs.  (Dkt. No. 411 at 14.)  However, I do not agree with this argument.

A careful reading of the proposed complaint in intervention reveals that it asserts a

material fact that is inconsistent with a material fact asserted by the parties in the Amended

Complaint and the Amended Complaint in Intervention ("Amended Complaints").  Specifically,

in the Amended Complaints, the parties repeatedly assert that they descend from the "Indians of

the village of St. Regis," while, in the proposed complaint in intervention, the Movant repeatedly

asserts the "Indians of the village of St. Regis" descend from the Kahnawá:ke.  (*Compare* Dkt.

No. 13, ¶¶ 1, 4, 6-12, *with* Dkt. No. 380, Ex. 1, ¶¶ 3, 5, 20, 21, 23; *see also* Dkt. No. 223.)  This

---

[8]        *See also In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 491
(S.D.N.Y. 1998) (denying motion to intervene because, among other things, intervention would
prejudice the existing parties by "[i]njecting . . . new issues [that would be] unsettling"); *Smith v.
Marsh*, 194 F.3d 1045, 1051 (9th Cir. 1999) (affirming denial of motion to intervene because,
among other things, district court found that intervention would prejudice the parties by
expanding the scope of the litigation and causing delay).

inconsistency is significant since the right to possess the lands in question hinges on a term in the Treaty with the Seven Nations, which expressly reserves those lands for the "Indians of the village of St. Regis."  7 Stat. 55 (1797) ("Treaty of 1796").

Thus, the proposed complaint in intervention injects into the action a collateral legal issue--i.e., whether the term "Indians of the village of St. Regis" in the Treaty of 1796 means "the Indians of the village of St. Regis" and their descendants, or whether the term somehow includes the ancestors of "Indians of the village of St. Regis."  If the Movant had moved to intervene in or around August of 1982 when it should have known of its interest in this litigation (or at least in or before November of 2003 when it acknowledges it knew of its interest in this litigation), the parties would have been able to resolve this collateral issue before now, possibly amicably,[9] thus avoiding the need to prolong the litigation at this time to resolve the collateral issue.

But there is yet another way that the Movant's intervention would inject new and complex issues into this case.  Even assuming that the proposed complaint in intervention asserts the exact same allegations as asserted by the Amended Complaints, and without expressing any opinion as to the merits of the allegations in the proposed complaint in intervention,[10] the parties

_____

[9]      When I say "amicably," I mean with less hostility than currently exists between the Plaintiffs and the Movant.  Plaintiffs' response papers are filled with (1) references to how much time, effort and money they have invested to litigate and settle this matter since 1982 (and in particular since settlement efforts increased in 2003), and (2) references to their strong feeling that the Movant is acting opportunistically (i.e., to participate in an anticipated settlement agreement that it spent no time, effort or money in reaching).  *See*, *e.g.*, Dkt. No. 396 at 5 ("This Court should not be misled about what Kahnawake's motion to intervene truly seeks–*cash and other benefits* from a settlement it had no part in creating and which settles a claim in which it has no beneficial interest.").

[10]      I reserve any opinion on the merits of the proposed complaint in intervention despite the fact that the second of the Movant's two arguments (i.e., that a motion to intervene cannot be resolved by reference to the ultimate merits of the allegations) is not completely

in this action have (in their motion papers and during oral argument) expressed their intent to contest, through motion practice, the Movant's right to the lands at issue under the Treaty of 1796.[11]  Indeed, the Movant itself recognized, in its motion papers and during oral argument, that even the filing of an independent action would result in such motions.  (Dkt. No. 380 at 17 [Movant's Brief, anticipating such motions to dismiss from the State of New York]).  Again, if the Movant had moved to intervene in or around August of 1982 (or at least in or before November of 2003), the parties would have been able to resolve this collateral issue before now, possibly amicably, thus avoiding the need to resolve the collateral issue at this time through extensive motion practice and prolonged litigation.

> c.     **Prejudice to Movant**

In arguing that the prejudice-to-the-movant factor weighs in favor of a finding of timeliness, the Movant essentially advances the following two arguments: (1) the Movant may be bound by the settlement's release of all claims against the State of New York for these lands; and (2) "it is uncertain that bringing a separate lawsuit would ultimately survive the anticipated

---

accurate.  Assuming of course that the allegations in a proposed complaint in intervention are nonconclusory, courts are *generally* prohibited from reaching the merits of those allegations; however, courts are permitted to reach the merits of those allegations where they are frivolous on their face.  *See, e.g.*, *SEC v. Am. Bd. of Trade, Inc.*, 830 F.2d 431, 443 (2d Cir. 1987) (affirming denial of motion to intervene because proposed complaint in intervention was frivolous on its face).  However, in reaching my conclusion that the prejudice-to-the-parties factor weighs against a finding of timeliness, I need not consider whether the proposed complaint in intervention is frivolous.

[11]     *See Beam v. HSBC Bank USA*, 02-CV-0682, 2004 U.S. Dist. LEXIS 8827, *8 (W.D.N.Y. March 30, 2004) (denying motion to intervene, in part because intervention would have delayed the action "by additional motion practice"); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 491 (S.D.N.Y. 1998) (denying motion to intervene, in part because intervention would have "ignite[d] controversy" by injecting new claims into the litigation).

motions to dismiss it anticipates from the State." (Dkt. No. 380 at 17-18.)

 The parties essentially respond as follows: (1) the proposed release in no way affects the Movant, and thus the Movant could pursue its claims in a separate lawsuit; (2) uncertainty that a separate lawsuit would ultimately survive any motions to dismiss is not a sufficient reason to support a finding of prejudice; (3) the Movant's claim of prejudice is belied by the fact that, during the past 23 years (including times when the Mohawk Plaintiffs' claims were in jeopardy), the Movant never sought to intervene; (4) indeed, there is no prejudice to the Movant because the Movant has no claim under the Treaty; and (5) in any event, any prejudice to the Movant is outweighed by the prejudice to the parties. (Dkt. No. 395 at 14-15; Dkt. No. 396 at 7-8; Dkt. No. 397 at 9; Dkt. No. 401 at 6-7.)

 The Movant essentially responds as follows: (1) the parties underestimate the impact, under the principle of *stare decisis,* of a decision regarding the Treaty of 1796 in this action on any future action brought by the Movant regarding the lands in question; and (2) if this case is settled without the Movant, the current Mohawk Plaintiffs will recover some money that belongs to the Movant and/or will fail to recover some money that belongs to the Movant--which facts will prejudice the Movant because the New York State legislature will probably not, in the future, give any more money (i.e., to the Movant) for Indian interests in the lands at issue. (Dkt. No. 411 at 15-17.)

 After carefully considering the above arguments and the case law cited in support of them, and assuming *arguendo*, with respect to the prejudice-to-movant factor, that the proposed settlement remains viable, I conclude that this factor weighs against a finding of timeliness. I understand the negative effects that the denial of this motion may conceivably have on the

Movant; however, I find that these effects are simply too speculative, under the circumstances, to constitute prejudice in this analysis.[12] Moreover, even if I found that such prejudice existed, I would find that it is only minimal,[13] especially when compared to the prejudice to the parties that would result if the motion were granted.[14]

There are three possible negative effects that denial of this motion could arguably have on the Movant's ability to file (and succeed on) a separate action regarding the lands in question: (1) the precedential effect (under the doctrine of *stare decisis*) of a decision on the merits in this action on a future action by the Movant; (2) the prohibitive effect of a statute settling all claims (present and future) regarding the lands in question on any future action brought regarding the lands in question; and (3) the practical effect on the Treasury of the State of New York, and the inclination of legislators, to pay money in the future to other claimants regarding the lands in question, once this action is settled.

Before I address each of these three possible negative effects in turn, I note that not

---

[12]    *See U.S. v. Pitney Bowes, Inc.*, 25 F.3d 66, 73 (2d Cir. 1994) (finding that the prejudice to the movant was not, *inter alia*, "immediate" or "direct" enough); *Riverkeeper, Inc. v. Whitman*, 93 Civ. 0314, 2001 U.S. Dist. LEXIS 21030, *20 (S.D.N.Y. Nov. 27, 2001) ("Any prejudice to the [movant] from denial of their motion is purely speculative . . . .").

[13]    *See Buxbaum v. Deutche Bank AG*, 216 F.R.D.72, 77 (S.D.N.Y. 2003) ("[T]he prejudice to be suffered by [the movant] from an inability to intervene is minimal, if not non-existent."); *U.S. v. Pitney Bowes, Inc.*, 25 F.3d 66, 73 (2d Cir. 1994) (finding that the prejudice to the movant was not, *inter alia*, "significant" enough); *Goldwasser*, 1993 U.S. Dist. LEXIS 11182 at *11-12 (finding that the prejudice to the movant was not "substantial"); *cf. Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 182-83 (2d Cir. 2001) (finding that the prejudice to the parties, as a result of the movant's delay, was only "minimally implicated" in the motion to intervene).

[14]    *See Farmland Dairies*, 847 F.2d at 1044-45 (finding that any prejudice to the movant did not outweigh the prejudice to the parties, which was "substantial"); *Goldwasser*, 1993 U.S. Dist. LEXIS 11182 at *11-12.

20

among the possible negative effects is the preclusive effect of a settlement release in this action

on a future action by the Movant.  This is because neither the Amended Complaints in this matter

(Dkt. Nos. 13, 223) nor the proposed settlement release (Dkt. No. 401, Ex. 1, Attach. A) even

mentions the Movant.  In addition to the obvious fact that a contract (such as a settlement

release) cannot bind a nonparty to that contract, there is the fact that neither the doctrine of *res*

*judicata* nor the doctrine of collateral estoppel apply where there has been no decision on the

merits–and the Movant has not even argued that the proposed release might result in such a

decision on the merits.  There is also the fact that, even if an order of dismissal were

accompanied by the relevant findings of fact, neither the doctrines of *res judicata* nor collateral

estoppel could operate to bind a nonparty and nonprivy to the action, such as the Movant–which

fact the Movant conceded in a prior "position paper."  (Dkt. No. 395, Ex. 1 at 9-11.)[15]

Finally, also not among the possible negative effects is the dispositive effect of a

successful motion to dismiss or motion for summary judgment by the defendants in any future

action brought by the Movant regarding the lands in question.  Uncertainty as to whether a

separate lawsuit would ultimately survive a dispositive motion is not a sufficient reason to

support a finding of prejudice.[16]  At least one reason for this rule is the fact that the ground for

---

[15]     *See generally Ionian Shipping Co. v. British Law Ins. Co.*, 426 F.2d 186, 190 (2d Cir. 1970) ("If [the proposed intervenor] is not a party to the suit, then the question of its superior rights cannot arise, for they are irrelevant to [the plaintiff]'s claim.  And if [the proposed intervenor] is not a party, and the issue does not arise, and thus is not appropriately litigated, it is hornbook law that [its] right to assert it in a subsequent suit will not be barred by either collateral estoppel or res judicata"; affirming denial of motion to intervene) (citations omitted).

[16]     *See Holocaust Victim Assets Litig. v. Swiss Bankers Ass'n*, 225 F.3d 191, 199 (2d Cir. 2000) ("[P]otential obstacles to the pursuit of an independent lawsuit [such as the fact that an independent action may, among other things, permit defendants to present numerous substantial defenses] do not . . . warrant[] intervention as of right.") (citation omitted); *FTC v. First Cap.*

dismissal may well be attributable, not to the Court's denial of the current motion, but to the

insufficiency of the Movant's claim, or to the Movant's own inaction in bringing that claim.[17]

### i.      Precedential Effect of Decision on Merits

It is conceivable that a decision on the merits in this action *may* have precedential effect,

under the doctrine of *stare decisis,* on a future action brought by the Movant regarding the lands

in question.  However, I find that this effect is doubtful for three reasons.

First, a decision on the merits in this action would have precedential effect on a future

action brought by the Movant only to the extent that those two actions involved the same specific

issue of law.[18]  Here, the Movant has not articulated any specific issue of law that its hypothetical

action would have in common with the current action; rather, the Movant appears to rely on the

general similarity between its proposed complaint in intervention and the Amended Complaints

---

*Consum. Membership, Inc.*, 206 F.R.D. 358, 364 (W.D.N.Y. 2001) (denying motion to
intervene); *Seils v. Rochester City Sch. Dist.*, 199 F.R.D. 506, 511 (W.D.N.Y. 2001) (denying
motion to intervene).

Also not a prejudicial obstacle is the fact that, as the Movant argues, it might take
"another decade (or longer) to recover on its interests" (Dkt. No. 380 at 18).  *See In re Holocaust
Victim Assets Litig.*, 225 F.3d at 199 ("[P]otential obstacles to the pursuit of an independent
lawsuit [such as the fact that an independent action may, among other things, take years do not . .
. warrant[] intervention as of right.") (citation omitted).

[17]      *See, e.g., U.S. v. City of N.Y.*, 198 F.3d 360, 366 (2d Cir. 1999) (the fact that the
governing statute of limitations would prevent the movant from commencing a new action
results, not from the court's disposition of the motion to intervene, but from the movant's failure
to act within the applicable limitations period); *Weisman v. Darneille*, 89 F.R.D. 47, 50-51
(S.D.N.Y. 1980) (citations omitted).

[18]      6 *Moore's Federal Practice* § 24.03[3][b] at 24-42.1 (3d ed. 2003) ("Under the
doctrine of stare decisis, a legal precedent is established when a court expressly decides a specific
issue of law. . . .); *Black's Law Dictionary* 1414 (7th ed. 1999) (defining "stare decisis" as "[t]he
doctrine of precedent, under which it is necessary for a court to follow earlier judicial decisions
when the same points arise again in litigation.").

filed in this matter.[19]  However, as previously discussed, there appears to be at least one

significant difference between the current action and a future action brought by the Movant.[20]

Perhaps this is why the Movant previously asserted to the Mohawk Plaintiffs that it "may bring

an action against any or all of the parties to the Litigation after the Litigation is . . . adjudicated."

(Dkt. No. 395, Ex. 1 at 9-10.)

　　　　Second, a decision on the merits in this action would have precedential effect on a future

action brought by the Movant only to the extent that the aforementioned specific issue of law

(which both actions involved) were *new*.[21]  Here, if the issue of law had to do with laches, then it

is arguable that the issue is not "new" but settled, having previously been decided by the Second

Circuit in *Cayuga Indian Nation of New York*.

　　　　Third, the potential for prejudice would be reduced if the Movant filed a separate action

forthwith and pushed that case forward toward a decision on the merits (or settlement).  Under

the circumstances, I find that the Movant has not, in making this motion, met its burden to show

that a decision on the merits in this action will prejudice the Movant, or even that it will likely

---

[19]　　　(Dkt. No. 380 at 17-18; Dkt. No. 411 at 15-17.)

[20]　　　Specifically, the current action alleges that the Mohawk Plaintiffs are *descendants* of "the Indians of the village of St. Regis" under the Treaty of 1796 while a future action by the Movant would presumably allege that the Kahnawá:ke are the *ancestors* of "the Indians of the village of St. Regis."

[21]　　　6 *Moore's Federal Practice* § 24.03[3][b] at 24-42.1 (3d ed. 2003) ("Stare decisis is not a relevant concern if the case does not involve the resolution of new legal issues.").  *See, e.g.*, *Oneida Indian Nation of Wisconsin v. N.Y.*, 732 F.2d 261, 265 (2d Cir. 1984) (in discussing *stare decisis* effect, referring to "conclusions of law on issues of first impression"); *Washington Elec.*, 922 F.2d at 98 (affirming denial of motion to intervene; reasoning, in part, that "[b]ecause this is not a case of first impression involving the resolution of new legal issues . . ., the doctrine of stare decisis . . . will not control future, related actions by [the movant].)" (citations omitted).

prejudice the Movant, with regard to its hypothetical action.

### ii. Prohibitive Effect of Statute

Rather than submit any evidence in support of its argument, the Movant merely presumes, in its motion papers, that any legislative approval of a settlement in this action would involve a statute prohibiting any future claims for the lands in question.[22]  There are three problems with the Movant's argument.

First, as previously noted, the viability of the proposed settlement is doubtful.

Second, the aforementioned presumption (that any legislative approval of a settlement in this action would involve a statute prohibiting any future claims for the lands in question) is not supported by the most recent version of the New York State enabling legislation proposed by the Governor of New York.[23]  *See* A.B. 5159-A, 2005 Leg., 228th Sess. (N.Y. 2005); S.B. 2365-A, 2005 Leg., 228th Sess. (N.Y. 2005).  For example, rather than pertaining to nonparties, the stated intent of this enabling legislation is to merely "ensure that the settlement agreement shall be fully enforceable in all respects as to the rights, benefits, responsibilities and privileges of all *parties* thereto."  *See* A.B. 5159-A, 2005 Leg., 228th Sess., § 2 (N.Y. 2005) (emphasis added); S.B. 2365-

---

[22]     (Dkt. No. 411 at 16-17 ["In this regard, the New York State Legislature would presumably approve such settlement terms only if they brought *finality* to the Land Claim and settled *all* tribal interests in the St. Regis Lands, including Kahnawá:ke's."].)  This presumption appears supported by a representation made by the State of New York in its response papers-- although, during oral argument, some of the other parties disputed the accuracy of this representation.  (Dkt. No. 400 at 3 ["Such legislation, if enacted into law by the Congress, would extinguish all potential Indian land claims within New York State arising out of the events that gave rise to this litigation."].)

[23]     (Dkt. No. 395, Ex. 3; Dkt. No. 400 at 6; Dkt. No. 401, Ex. A [letter]; Dkt. No. 412.)

A, 2005 Leg., 228th Sess., § 2 (N.Y. 2005) (emphasis added).[24]

Third, the possibility that such a statute might be enacted is militated by a fact cited by

counsel during oral argument–that such a statute may well contain a "saving clause."  Such a

provision, also called a "savings clause" or "severability clause," would essentially preserve

rights, which existed at the time the legislation was enacted, for a certain period of time.  *See*

*Black's Law Dictionary* 1344 (7th ed. 1999).  A brief survey of relevant cases indicates that such

saving clauses appear relatively common in federal legislation regarding Indian land claims.  *See*,

*e.g.*, *Cayuga Indian Nation v. Cuomo*, 565 F. Supp. 1297, 1327 (N.D.N.Y. 1983) (McCurn, D.J.)

(discussing such a saving clause in the Nonintercourse Act of 1793); *Lord v. Babbitt*, 991 F.

Supp. 1150, 1155-56 (D. Ala. 1997) (discussing such a saving clause in the Alaska Native

Claims Settlement Act of 1971).

Under the circumstances, I find that the Movant has not, in making this motion, met its

burden to show that there will be enacted, or even that there will likely be enacted, a statute

(arising from, or concerning, the settlement of this action) that will prejudice the Movant with

regard to its hypothetical action.

### iii.    Practical Effect on Treasury and/or Politics

The Movant's argument that the payment of money to the Mohawk Plaintiffs in this

action will diminish the amount of money that the Movant can recover in a future action against

the State of New York presumes that either (1) the State of New York does not have enough

---

[24]    While it is true that the legislation is currently being revised in light of the
Supreme Court's recent decision in *City of Sherrill*, that revision will "relate principally to the
jurisdictional status of settlement lands and the collection of sales, use and excise taxes on goods
and services sold on or from such lands."  (Dkt. No. 395, Ex. 3; Dkt. No. 401, Ex. A [letter]; Dkt.
No. 412.)

money to satisfy both claims or (2) the State of New York, for political reasons, will not pay enough money to satisfy both claims.  (Dkt. No. 411 at 16.)

First, as previously noted, the viability of the proposed settlement is doubtful.  Second, the Movant submits no facts in support of the aforementioned presumption (that either the State of New York does not have enough money to satisfy both claims or the State of New York will not pay enough money to satisfy both claims).  Third, it is not even clear that a possible diminishment in recoverable damages is a cognizable form of prejudice for purposes of a motion to intervene.  *See FTC v. First Cap. Consum. Membership, Inc.*, 206 F.R.D. 358, 364 (W.D.N.Y. 2001) (the fact that the proposed intervenor's "interest will [arguably] be impaired because its prospects for reimbursement would otherwise be diminished, which would make an independent action [arguably] 'futile'" is an obstacle that does not, as a matter of law, require intervention) (citations omitted).

Under the circumstances, I find that the Movant has simply not met its burden to show that the payment of money to the Mohawk Plaintiffs will prejudice the Movant.

### d.    Unusual Circumstances

In arguing that the unusual-circumstances factor weighs in favor of a finding of timeliness, the Movant asserts that an "unusual circumstance" exists in that there is a strong federal policy to protect Indian claims.  (Dkt. No. 380 at 18; Dkt. No. 411 at 17.)

The parties respond by advancing two arguments: (1) if the specific federal policy to which the Movant refers (i.e., the policy to allow Indian land claims without regard to statutory or common law limitations periods) were able to excuse the untimeliness of a motion to intervene, then the timeliness requirement of Rule 24 would be omitted from any motion to

intervene in Indian land claim cases, which is clearly not the case; and (2) the only unusual circumstance in this case is the Movant's extraordinary delay in bringing this motion.  (Dkt. No. 397 at 9-10; Dkt. No. 401 at 7.)

The Movant replies that three additional unusual circumstances exist: (1) the politics involved in Indian land claims are complex; (2) the existing parties may be guilty of possible deceptive actions or "unclean hands"; and (3) the Movant's ability to protect its interest will be, as a practical matter, impaired or impeded by a judgment entitling the existing plaintiffs to recover the disputed lands.  (Dkt. No. 411 at 17-18.)

After carefully considering the above arguments and the case law cited in support of them, I conclude that the unusual-circumstances factor weighs against a finding of timeliness. First, I find that two unusual circumstances exist militating against a finding of timeliness: (1) that the Movant waited so long to file this motion after it became aware of, or should have become aware of, its interest in this litigation;[25] and (2) that it appears that the Movant's delay was due to the fact that it chose to conserve its financial resources until it believed that settlement might actually come to fruition.[26]

---

[25]     *See Seneca Nation of Indians v. N.Y.*, 213 F.R.D. 131, 135 (W.D.N.Y. 2003) (Indian land claim case denying motion to intervene based on untimeliness; finding that the only "unusual circumstances" were the fact that the property rights to be adjudicated were asserted under treaties, the transactions in question occurred hundreds of years ago, and the movant had waited so long to make the motion).

[26]     *See Cherokee Nation v. U.S.*, No. 218-89, 2002 U.S. Claims LEXIS 266, *8-9 (Fed. Cl. Oct. 9, 2002) (Indian land claim case denying motion to intervene based on untimeliness; finding that the only "unusual circumstances" were the fact that the movant claimed it could not have moved to intervene earlier because of lack of sufficient financial resources, and the fact that it appeared to the court that the movant chose to conserve its financial resources until it became apparent that settlement might actually come to fruition).

Second, I find that no unusual circumstances exist militating in favor of a finding of timeliness. Specifically, I do not find that the asserted federal policy favoring Indian land claim cases is an unusual circumstance militating in favor of a finding of timeliness.[27] I do not find that the asserted complexity of the politics involved in Indian land claims is an unusual circumstance militating in favor of a finding of timeliness.[28] I do not find that any of the parties are guilty of deception or "unclean hands" based on the facts presented in this motion.[29] I do not find that the remote possibility of a judgment in this case (whether in favor of plaintiffs or against plaintiffs)

----

[27]        *See Seneca Nation of Indians v. N.Y.*, 213 F.R.D. 131, 135 (W.D.N.Y. 2003) (Indian land claim case denying motion to intervene based on untimeliness; not citing federal policy favoring Indian land claims as an "unusual circumstance" militating in favor of a finding of timeliness); *Ute Distrib. Corp. v. Norton*, 01-4020, 2002 U.S. Dist. LEXIS 14982, *13-16 (10th Cir. July 25, 2002) (Indian land claim case affirming denial of motion to intervene based on untimeliness; not citing federal policy favoring Indian land claims as an "unusual circumstance" militating in favor of a finding of timeliness); *Cherokee Nation v. U.S.*, No. 218-89, 2002 U.S. Claims LEXIS 266, *8-9 (Fed. Cl. Oct. 9, 2002) (Indian land claim case denying motion to intervene based on untimeliness; not citing federal policy favoring Indian land claims as an "unusual circumstance" militating in favor of a finding of timeliness). *See also Oneida Indian Nation v. N.Y.*, 732 F.2d 261, 266 (2d Cir. 1983) (Indian land claim case reversing denial of motion to intervene; not citing federal policy favoring Indian land claims as an "unusual circumstance" militating in favor of a finding of timeliness); *Oneida Indian Nation v. N.Y.*, 201 F.R.D. 64, 69 (N.D.N.Y. 2001) (Indian land claim case granting motion to intervene; not citing federal policy favoring Indian land claims as an "unusual circumstance" militating in favor of a finding of timeliness).

[28]        *See*, *supra*, cases cited in note 27 (not citing the complexity of the politics involved in Indian land claim cases as an "unusual circumstance" militating in favor of a finding of timeliness).

[29]        I note that the Movant cites *Stallworth v. Monsanto Co.*, 558 F.2d 257, 267 (5th Cir. 1977) as supporting the Movant's assertion that "deception is an unusual circumstance that weighs in favor of intervention." (Dkt. No. 411 at 17.) However, I do not read *Stallworth* as talking about deception but waiver and estoppel. *Stallworth*, 558 F.2d at 267 ("Since the plaintiffs urged the district court to make it more difficult for the appellants to acquire information about the suit early on, we do not think they should now be heard to complain that the appellants should have known about it or appreciated its significance sooner.").

impairs or impedes the Movant's interests, as a practical matter, sufficient to constitute an unusual circumstance militating in favor of a finding of timeliness.[30]  Finally, I do not find that any other unusual circumstances exist militating in favor of a finding of timeliness.[31]

Even if I were to find there exists in this case unusual circumstances in favor of a finding of timeliness, I would find that those circumstances had a minimal impact on the timeliness finding, especially when compared to the impact of the first two elements (length of time and prejudice to the parties).

Having found that the Movant's motion to intervene as of right is untimely, sufficient grounds exist for the Court to deny its motion, even assuming the Movant has met the next three elements.  However, for the sake of thoroughness, I will briefly address each of those three elements.

---

[30]     *Cf. Oneida Indian Nation v. N.Y.*, 732 F.2d 261, 266 (2d Cir. 1983) (concluding to the contrary based on a finding that there was substantial and significant "likelihood" of a judgment that had a *stare decisis* effect on the movant's interests).

[31]     *See, e.g., Oneida Indian Nation v. N.Y.*, 201 F.R.D. 64, 69 (N.D.N.Y. 2001) ("unusual circumstances" militating in favor of a finding of timeliness were the fact that the case involves claims to land extending back more than 200 years, plaintiffs waited about 200 years to bring suit, the movant had to conduct extensive background research to support its motion to intervene, and the suit has not proceeded substantially beyond the pleading stage in the 20 years since it was filed).  Here, I do not find that the fact that the events underlying the claims at issue occurred more than 200 years ago, or that the plaintiffs waited almost 200 years to sue, to be "unusual," given the number of factually analogous Indian land claim cases that have arisen over recent years, or even that those facts are relevant to the issue of whether Movant has unreasonably delayed in bringing suit after it became aware of, or should have become aware of, its interest in this litigation.  In addition, I do not find that the background research that the Movant conducted to support its motion was so "extensive" as to explain or excuse its delay, or that this case has not proceeded "substantially" beyond the pleading stage.

B.     **Whether the Applicant Claims an Interest Relating to the Property or the Subject of the Action**

1.     **Overview of Law**

Rule 24(a) states, in pertinent part, "[A]nyone shall be permitted to intervene in an action . . . when the applicant claims an interest relating to the property or transaction which is the subject of the action." Fed. R. Civ. P. 24(a). "For an interest to be cognizable under Rule 24(a)(2), it must be direct, substantial, and legally protectable." *U.S. v. Peoples Benefit Life Ins. Co.*, 271 F.3d 411, 415 (2d Cir. 2001) (affirming denial of motion to intervene in part because interest was not sufficiently "direct") (citations omitted).[32] "An interest that is remote from the subject matter of the proceeding, or that is contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy the rule." *U.S. Peoples Benefit Life Ins. Co.*, 271 F.3d 411, 415 (2d Cir. 2001) (citations omitted).[33] Similarly, "Intervention under Rule 24(a)(2) . . . cannot be used as a means to inject collateral issues into an existing action." *U.S. v. City of N.Y.*, 198 F.3d at 365 (affirming denial of motion to intervene) (internal quotations and citation omitted).[34]

---

[32]     *See also N.Y. News*, 972 F.2d at 486 (affirming denial of motion to intervene in part because interest was too "remote" and was not a "significantly protectable interest") (citations omitted); *Washington Elec.*, 922 F.2d at 97 (affirming denial of motion to intervene in part because interest was not sufficiently "direct" or "substantial") (citations omitted).

[33]     *See also Washington Elec.*, 922 F.2d at 97 (citations omitted).

[34]     *See also N.Y. News*, 972 F.2d at 486 (internal quotations and citation omitted); *Washington Elec.*, 922 F.2d at 97 (citations omitted).

2.      **Analysis**

The Movant argues that it has a "direct" and "legally protectable" interest in this case because (1) the Movant qualifies as a "tribe" under the Nonintercourse Act, thus enabling it to sue for its possessory interest in the lands in question, and (2) the Movant asserts a possessory interest in the lands in question.  (Dkt. No. 380 at 19-21.)

While most of the parties ignore this argument, Plaintiff Mohawk Council of Akwesasne argues that the Movant has no legally protectable interest in the lands in question, which were reserved by the Treaty of 1796 for the "Indians of the village of St. Regis."  (Dkt. No. 396 at 9-11.)  Rather, argues the Plaintiff Mohawk Council of Akwesasne, the only right the Movant had under the Treaty of 1796 was to receive annuities, which it gave up in 1844 when it agreed to forgo those annuities for a lump sum payment.  (*Id*.)

The Movant replies that (1) it satisfies any standing requirement because it is in the identical shoes as those of the Mohawk Plaintiff and (2) there exists further evidence that the Movant has a legally protectable interest in the lands in question: (a) certain statements made by the Plaintiff Mohawk Council of Akwesasne in their letter of January 28, 2005 (Dkt. No. 380, Ex. 4); (b) certain statements made by Harry R. Sachse, Esq., in his letter of October 4, 1979 (Dkt. No. 411, Ex. 7, Attach. A); and (c) certain statements made by Mr. Sachse in his memorandum of May 4, 1979 (Dkt. No. 411, Ex. 5, Attach. A).  (Dkt. No. 411 at 18-20.)

After carefully considering the above arguments and the case law cited in support of them, I find that the Movant does not claim a direct, substantial and legally protectable interest relating to the property or the subject of the action for three reasons.  First, based on the Movant's proposed complaint in intervention, I find that the Movant does not allege--in any way

31

other than a wholly conclusory fashion[35]--a possessory interest in the lands in question.[36]  Rather,

_____

[35]        Courts are not required to accept as true conclusory allegations of a motion to intervene.  *See UPS of Am., Inc. v. The Net, Inc.*, 225 F.R.D. 416, 421 (E.D.N.Y. 2005) (denying motion to intervene in part because of the movant's conclusory allegation that he operated the defendant company) (citations omitted); *Audio Serv. Co. and Sales Ctr., Inc. v. Topham*, 93 Civ. 0737, 1995 U.S. Dist. LEXIS 1069, *1 (S.D.N.Y. Jan. 31, 1995) (denying motion to intervene in part because of the movant's conclusory allegation that the resolution of the action will adversely impact her claim for a commission); *Weller v. Actors' Equity Assoc.*, 93 F.R.D. 329, 330 (S.D.N.Y. 1981) (denying motion to intervene in part because of the movant's conclusory allegation that its interests were inadequately being represented); *see also Flynn v. Hubbard*, 782 F.2d 1084, 1092-1093 (1st Cir. 1986) (affirming denial of motion to intervene in part because of the movant's conclusory allegation that it had a First Amendment interest in the litigation); *Ordnance v. Container Corp. v. Sperry Rand Corp.*, 478 F.2d 844, 845 (5th Cir. 1973) (affirming denial of motion to intervene in part because of the movant's conclusory allegation that its interests were inadequately being represented).

For example, courts have denied motions to intervene where the movant's proposed complaint in intervention contains merely conclusory allegations regarding its interest in the litigation.  *See*, *e.g.*, *Penn. v. Flaherty*, No. 84-3639, 1985 U.S. App. LEXIS 22093, *6 (3d Cir. March 29, 1985) (affirming denial of motion to intervene in the alternative because of the movant's conclusory allegation in its proposed petition in intervention that its interests were inadequately being represented); *U.S. v. Am. Instit. of Real Estate Apprais.*, 442 F. Supp. 1072, 1082 (N.D. Ill. 1977) (denying motion to intervene as of right in part because of the movant's conclusory allegation in its proposed complaint in intervention that its interests were inadequately being represented); *cf. Lucero v. City of Albuquerque*, 140 F.R.D. 455, 457-458 (D.N.M. 1992) (denying motion to intervene in part because of the movants' conclusory allegation in their proposed complaint in intervention that defendants intended to deprive them of their First and Fourteenth Amendment rights).

[36]        The Movant conclusorily alleges a possessory interest in the lands in question. (*See*, *e.g.*, Dkt. No. 380, Ex. 1, ¶ 1 [seeking "declaration of ownership and the right to possess" the lands in question], ¶ 29 [alleging that the "State of New York illegally purchased these St. Regis Lands from" the Movant], ¶ 38 [alleging that the Movant "unquestionably lost significant possessory interests pursuant to these illegal purchases and conveyances of certain St. Regis Lands"], ¶ 66 [alleging that the Movant was deprived of "its possessory interests" of the lands in question by New York State's disposition of those lands].)

Rather than alleging facts in support of these conclusory allegations, the Movant alleges only a close (and ancestral) relationship to the separate entity for which the lands in question were reserved under the Treaty of 1796--the "Indians of the Village of St. Regis."  (*See*, *e.g.*, Dkt. No. 380, Ex. 1, ¶ 3 [alleging "strong inter-familial and inter-clan bonds" between the Movant and the St. Regis Mohawk Nation before 1796], ¶ 5 [alleging that the "'Indians of the Village of St. Regis" of the 1796 Treaty are the descendants of" the Movant], ¶ 20 [alleging "very close inter-familial and inter-clan bonds" between the Movant and the Canadian and American St. Regis

it appears from the proposed complaint in intervention that the Movant alleges what can best be characterized as a "preservation and maintenance" interest in the lands in question--an interpretation that is supported by the Movant's motion papers and statements during oral argument.[37]

Second, to the extent that the Movant argues that this assertion of a "preservation and maintenance" interest in the lands in question is sufficient, I find that such an interest is not sufficiently "direct" and "substantial," but rather is collateral to the issues in the existing action.[38] *See also*, *supra*, Part I.A.2.b.ii. (discussing difference between the plaintiffs' *descendants*

_____

Mohawk Nation before and after 1796, including the "significant shared use of lands and resources"], ¶ 21 [alleging that the Movant "maintained strong ties to and interests in the St. Regis Lands that necessitated its inclusion as a signatory to the 1796 Treaty"], ¶ 23 [alleging that the "'Indians of the Village of St. Regis' descend from" the Movant].)

[37]       (*See*, *e.g.*, Dkt. No. 380, Ex. 1, ¶ 36 [alleging that "Defendants have unlawfully taken and converted the natural resources found on or under the St. Regis Lands . . . ."], ¶ 49 [alleging that the Movant "entered into the 1796 Treaty for the reservation of the St. Regis Lands for" its tribe], ¶ 56 [alleging that "Defendants have unlawfully taken and converted the natural resources found on or under the St. Regis Lands . . . ."]; Dkt. No. 411 at 19 and note 4 [arguing that the Treaty of 1796 provides that the Movant has an interest in the lands in question, including an interest "that the St. Regis Lands would be preserved and maintained."].)  Notably, the Movant does not articulate (in either its proposed complaint in intervention or its motion papers) what sentence of the Treaty of 1796 provides this alleged "preservation and maintenance" interest.

[38]       *See City of N.Y.*, 198 F.3d at 365 (coalition's interests in preventing water filtration in a city watershed were only collaterally related to the subject matter of the government's action to enforce the city's obligation to comply with federal drinking water statutes); *Kheel*, 972 F.2d at 486 (movant's interest in imposing Rule 11 sanctions against parties to the action were only collaterally related to the merits of the action); *Washington Elec.*, 922 F.2d at 97 ("If [the movant] were permitted to intervene, the district court would no longer preside over a conventional contractual dispute between two parties, but, in addition, would have to determine both the rights of the other signatories as urged by their self-appointed representative and how much (if anything) should be returned to the energy consumers of Vermont.").

allegation and the Movant's *ancestors* allegation).

Finally, to the extent that the Movant is relying on prior statements made by any parties or their counsel as evidence in support of this motion,[39] I find those statements to be insufficient, under the circumstances, to transform the Movant's claimed interest into a direct, substantial and legally protectable interest.  To the extent the Movant is arguing not that those prior statements are evidence but that they are assertions estopping the parties from denying certain facts, I note that, even if any parties were estopped from denying certain facts, that estoppel would not cause the Movant to meet its burden on this motion.

**C.      Whether the Applicant Is So Situated that the Disposition of the Action May, as a Practical Matter, Impair or Impede the Applicant's Ability to Protect Its Interest in the Property that Is the Subject of the Action**

**1.      Overview of Law**

Rule 24(a)(2) states, in pertinent part, "Upon timely application anyone shall be permitted to intervene in an action . . . when the applicant claims an interest relating to the property or transaction which is the subject of the action *and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect [its] interest [in the property or transaction which is the subject of the action]*."  Fed. R. Civ. P. 24(a)(2) [emphasis added].

A movant need not be legally bound by the result of an action to be impaired or impeded

---

[39]      *See*, *e.g.*, Dkt. No. 411 at 18-20 (citing Dkt. No. 380, Ex. 4 [letter from Plaintiff Mohawk Council of Akwesasne dated January 28, 2005], Dkt. No. 411, Ex. 7, Attach. A [letter from Harry R. Sachse, Esq., dated October 4, 1979], and Dkt. No. 411, Ex. 5, Attach. A [memorandum from Mr. Sachse dated May 4, 1979]).

by its disposition.[40]  However, a movant must establish a practical, rather than theoretical,

impairment of its interest.[41]  The fact that a movant has had or will have other opportunities to

raise its concerns other than through the current action is a sufficient ground on which to base a

conclusion that the movant has not shown that its interests will be impaired by the disposition of

the instant action.[42]  Furthermore, as previously discussed in Part I.A.2.c., the fact that a new

action commenced by the Movant might face obstacles (e.g., a successful motion to dismiss, a

delay in resolution, etc.) does not show that the disposition of the pending action would impair or

---

[40]      See Advisory Committee Notes regarding 1966 Amendment to Fed. R. Civ. P. 24
("[T]he deletion of the '[is or may be] bound' language [from the prior version of Rule 24]
. . . frees the rule from undue preoccupation with strict considerations of res judicata."); 6
Moore's Federal Practice § 24App.05 (3d ed. 2003).

[41]      See Union Switch & Signal, Inc. v. St. Paul Fire & Marine Insur. Co., 226 F.R.D.
485, 488 (S.D.N.Y. 2005) ("The hypothetical effect of an adverse judgment on any rights that the
Joint Venture may have against [the movant] . . . is not the type of practical impairment
contemplated by Rule 24(a)(2).") (denying motion to intervene).  See also U.S. v. Texas E.
Transmission Corp., 923 F.2d 410, 414 (5th Cir. 1991) ("[A] theoretical possibility cannot
constitute the requisite practical impairment under . . . Rule 24(a)(2).") (affirming denial of
motion to intervene); Wade v. Goldschmidt, 673 F.2d 182, 184 (7th Cir. 1984) ("Our review of an
intervention order does not involve an examination of the theoretical interests of proposed
intervenors . . . .") (affirming denial of motion to intervene); Advisory Committee Notes
regarding 1966 Amendment to Fed. R. Civ. P. 24 (noting that one of the main purposes of the
revision was to emphasize the practical, rather than mere theoretical, effect of a party's absence);
6 Moore's Federal Practice § 24.03[3][a] at 24-42 (3d ed. 2003) ("A potential intervenor must
establish a practical, rather than theoretical, impairment of its interest.").

[42]      See Holocaust Victim Assets Litig. v. Swiss Bankers Ass'n, 225 F.3d 191, 199 (2d
Cir. 2000) (movant remained free to file a separate action); U.S. v. City of N.Y., 198 F.3d 360,
366-67 (2d Cir. 1999) (movant could protect his interest by other means, such as a defamation
suit); Washington Electric, 922 F.2d at 98 (movant could pursue interests of third parties in
subsequent action); Union Switch & Signal, Inc., 226 F.R.D. at 488 (movant could sue in
subsequent indemnification action); Seils, 199 F.R.D. at 511 (movants could raise their
grievances in separate actions).  See also Donaldson v. U.S., 400 U.S. 517, 531 (1971) ("[T]he
taxpayer, to the extent that he had . . . a protectable interest . . . may always assert that interest . . .
in due course at its proper place in any subsequent trial.") (citation omitted).

impede the Movant's ability to protect its interest.[43]

## 2.     Analysis

The Movant argues that the disposition of the current action may, as a practical matter, impair or impede its ability to protect its interest in the property in question essentially because: (1) its interest in the lands in question is the same as, and is supported by the "same legal arguments" as, the interest of the Mohawk Plaintiffs, and thus any resolution of the current lawsuit would impair or impede the Movant's interests; (2) "[i]f denied intervention, [the Movant] would be disadvantaged in collecting on its land interests for an indefinite amount of time"; and (3) requiring it to initiate its own lawsuit regarding its interest would contravene interests of judicial economy.  (Dkt. No. 380 at 21-22; Dkt. No. 411 at 20.)[44]

While some of the parties ignore these arguments, other of the parties respond essentially that (1) the Movant is free to pursue an independent action, which will not be affected by *stare decisis*, *res judicata*, or collateral estoppel–a fact that the Movant admits in a "position paper" dated October 29, 2004, (2) obstacles to litigation are not the sort of "impairment" or "impediment" contemplated by Rule 24, and (3) in any event, there would be no impairment caused by the resolution of this lawsuit (which has to do with possessory interests in the lands in

---

[43]     *See Holocaust Victim Assets Litig. v. Swiss Bankers Ass'n*, 225 F.3d 191, 199 (2d Cir. 2000) (citation omitted); *City of N.Y.*, 198 F.3d at 366 (citation omitted); *First Cap. Consum. Membership*, 206 F.R.D. at 364; *Weisman v. Darneille*, 89 F.R.D. 47, 50-51 (S.D.N.Y. 1980) (citations omitted).

[44]     I note that, in its motion papers, the Movant combined its discussion of the standard's third element (i.e., whether the applicant is so situated that the disposition of the action may, as a practical matter, impair or impede its ability to protect its interest in the property that is the subject of the action) with its discussion of the standard's fourth element (i.e., whether the applicant's interest is adequately represented by existing parties).  (Dkt. No. 380 at 21-22; Dkt. No. 411 at 20.)

question) because the Movant has no possessory interest in the lands in question.  (Dkt. No. 395 at 14-15; Dkt. No. 396 at 11-12; Dkt. No. 397 at 9.)

After carefully considering the above arguments and the case law cited in support of them, I find that the Movant is not so situated that disposition of the current action may, as a practical matter, impair or impede its ability to protect its interest in the property in question.  As an initial matter, I find that there is no "interest" in the relevant property that needs to be "protected" for the purpose of Rule 24 since, as previously discussed, I find that the Movant does not claim a direct, substantial and legally protectable interest in the relevant property.[45]  Even if there were such an interest, there would be no impairment or impediment of the Movant's ability to protect that interest because the Movant can bring a future action against numerous parties under various causes of action–a fact that the Movant apparently acknowledges.  (Dkt. No. 395, Ex. 1 at 9-11 ["position paper" by Movant asserting, among other things, that it "may bring an action against any or all of the parties to the Litigation after the Litigation is . . . adjudicated."].)[46]

The Movants' arguments to the contrary are unpersuasive.  For example, for reasons previously discussed, the Movant's "maintenance" and "preservation" interest in the lands in question is not the same as the possessory interest of the Mohawk Plaintiffs.  Similarly, also as previously discussed, the fact that the Movant might face obstacles (including delay or dismissal)

---

[45]     *See*, *supra*, Part I.B.2.

[46]     (*See also* Dkt. No. 380 at 22 [Movant's initial brief, arguing, not that it would not be able to initiate a separate lawsuit, but merely that such a lawsuit would be prolonged, would be contrary to interests of judicial economy, might result in double jeopardy to the current parties, and might be dismissed]; Dkt. No. 411 at 20 [Movant's reply brief, arguing that "the ability of Kahnawá:ke to bring a separate lawsuit is not dispositive"], 23 [Movant's reply brief, contemplating "duplicative litigation" and "garnishment of any settlement award" from the current proceeding].)

in its subsequent action does not mean that the disposition of the pending action would impair or
impede the Movant's ability to protect its interest.[47]

### D.   Whether the Applicant's Interest Is Adequately Represented by Existing Parties

#### 1.   Overview of Law

Rule 24(a)(2) states, in pertinent part, "Upon timely application anyone shall be permitted
to intervene in an action . . . [when the applicant fulfills certain requirements] unless the
applicant's interest is adequately represented by existing parties."  Fed. R. Civ. P. 24(a)(2).  The
burden of demonstrating inadequacy of representation is squarely on the movant.  *See Butler,
Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 179 (2d Cir. 2001) (recognizing that "burden
to demonstrate inadequacy of representation" is on the movant) (citations omitted); *U.S. v. City
of N.Y.*, 198 F.3d at 364 ("The standards governing intervention as of right under [Rule 24(a)(2)]
are well-established: '[A]n applicant must . . . show that the interest is not protected adequately

---

[47]      Finally, I note that, in arguing that the standard's third element (i.e., whether the
applicant is so situated that the disposition of the action may, as a practical matter, impair or
impede its ability to protect its interest in the property that is the subject of the action) weighs in
favor of intervention, the Movant relies on a balancing of judicial economy.  (Dkt. No. 380 at 22;
Dkt. No. 411 at 20; *cf.* Dkt. No. 411 at 20-23 [discussing judicial economy in arguing for
permissive intervention].)  However, I find that a balancing of judicial economy militates against
intervention.  No additional judicial resources would have to be spent (in terms of becoming
familiar with the case) if a separate action were filed, since that action would be assigned to
District Judge McCurn and myself, who are already familiar with the Movant's claims.
However, permitting the Movant to intervene in this action would undoubtedly delay the
resolution of the current proceeding by adding one more party to conduct discovery, one more
party on whom to conduct discovery, one more party to file motions, one more party from whom
to be heard on other parties' motions, and one more plaintiff with whom Defendants had to settle.
During this prolonged period of litigation, the current parties would have to pay additional legal
fees.  It simply would be inefficient.  In any event, even if judicial economy militated in favor of
intervention, that fact would not lead me to conclude that the Movant has met its burden with
regard to this third element.

by the parties to the action.'") (citations omitted).[48]

While the burden to demonstrate inadequacy of representation is generally speaking "minimal," the Second Circuit has demanded a more rigorous showing of inadequacy in cases where the state or United States purports to be suing as a *parens patriae*. *See U.S. v. Hooker Chem. & Plastic Corp.*, 749 F.2d 968, 984-990 (1984). The Second Circuit explained:

> Under the *parens patriae* concept . . . a state [or the United States] that is a party to a suit involving a matter of sovereign interest is presumed to represent the interest of all its citizens. Thus, to intervene in a suit in district court in which a state [or the United States] is already a party, a citizen . . . must overcome this presumption of adequate representation. *A minimal showing that the representation may be inadequate is not sufficient.* The applicant for intervention must demonstrate that its interest is in fact different from that of the state [or the United States] and that that interest *will* not be represented by the state [or the United States].

*Hooker*, 749 F.3d at 984-85 (internal quotation and citation omitted) [emphasis added].

## 2.    Analysis

The Movant argues that it has met its burden with respect to the fourth element of Rule 24(a)(2) because: (1) all that the Movant has to show, in order to satisfy Rule 24, is that the representation by the current parties "may be" inadequate–a showing that is "minimal"; and (2) the Movant and the current Mohawk Plaintiffs are both claiming an interest in the exact same

---

[48]    In the event there is any confusion about the source of this burden in Rule 24(a)(2), I note that Rule 24(a)(2) clearly states that an applicant shall be permitted to intervene when he fulfills certain requirements "unless the applicant's interest is adequately represented." By stating that intervention is permitted "unless" the movant's interest is adequately represented, Rule 24(a)(2) makes inadequate representation a *necessary condition* of intervention. *See* Patrick J. Hurley, *A Concise Introduction to Logic* 20 (3d ed. 1988) ("[A]n event *B* is said to be a *necessary condition* for an event *A* whenever *A* cannot occur without the occurrence of *B*.") [emphasis in original]. Like the burden to fulfill the other necessary conditions of Rule 24(a)(2), the burden to fulfill this necessary condition is clearly on the Movant.

land, a fact which itself shows that the current Mohawk Plaintiffs cannot adequately represent the Movant's interests.  (Dkt. No. 380 at 21-22; Dkt. No. 411 at 20.)

Generally, the parties do not appear to respond to this argument, focusing instead on the other elements of Rule 24(a)(2).  The exception is the United States, which argues that "[t]he United States will assert the same legal arguments to establish liability as would the [Movant], and thus [the Movant's] interests are currently being adequately represented."  (Dkt. No. 397 at n.15.)

After carefully considering the above arguments and the case law cited in support of them, I find that any "interest" that the Movant has in the property that is the subject of this action is being adequately represented by the existing parties.  Again, as previously discussed, I find that the Movant does not claim an interest relating to the property or transaction which is the subject of the action.[49]  As a result, there is no interest that needs to be adequately represented by the existing parties.

Even if the Movant did claim such an interest, that interest would be adequately represented by the United States.  By suing under the Nonintercourse Act (25 U.S.C. § 177), the United States is suing in a role of *parens patriae*, as guardian of all Indians with an interest in the lands in question.  *See Federal Power Comm'n v. Tuscarora Indian Nation*, 362 U.S. 99, 118-119 (1960) ("The obvious purpose of [25 U.S.C. § 177] is to prevent unfair, improvident or improper disposition by Indians of lands owned or possessed by them to other parties, except the United States, without the consent of Congress, and to enable the Government, acting as *parens patriae* for the Indians, to vacate any disposition of their lands made without its consent.")

---

[49]       *See*, *supra*, Part I.B.2.

(citations omitted).[50]  Indeed, again, the United States appears to, albeit carefully, acknowledge

this fact.  (Dkt. No. 397 at n.15.)

Thus, a presumption of adequate representation exists, requiring the Movant to make

more than a minimal showing that the representation may be inadequate.  *Hooker*, 749 F.2d at

984-85.[51]  Specifically, the Movant "must demonstrate that its [purported] interest is in fact

different from that of the [United States] and that that interest *will* not be represented by the

[United States]."  *Id.* (internal quotation and citation omitted) (emphasis added).  The Movant

has not met this heavier burden.  *See South Dakota v. U.S. D.O.I.*, 317 F.3d 783, 785-87 (8th Cir.

2003) (affirming denial of motion to intervene in declaratory judgment action because defendant

United States, even though it was not acting under Nonintercourse Act in seeking to place a

certain parcel of land in trust for an Indian tribe, was presumed to be acting on behalf of the tribe,

and the tribe failed to rebut that presumption in making its motion to intervene) (citations

---

[50]     *See also U.S. v. Oneida Indian Nation of N.Y.*, 477 F.2d 939, 942-943 (Ct. Cl.
1973) (recognizing the *parens patriae* status of the United States in re-affirming the Court's
previous decisions that "the Trade and Intercourse Act [25 U.S.C. § 177] creates a fiduciary
relationship between the Indians and the United States Government.") (citations omitted);
*Alabama-Coushatta Tribe v. U.S.*, No. 3-83, 1996 U.S. Claims LEXIS 128, 208-220 (Ct. Cl.,
July 22, 1996) (citations omitted); *County of Oneida v. Oneida Indian Nation*, 470 U.S. 226, 261
& n.11 (1985) (C.J. Burger, J. Stevens, J. White, and J. Rehnquist dissenting) (observing that the
"novel development in litigation involving Indian land claims arose in order to benefit a special
class of litigants," and that equitable principles such as *parens patriae* should apply to such
cases).

[51]     *Cf. Butler*, 250 F.3d at 179 (citations omitted) ("While the burden to demonstrate
inadequacy of representation is generally speaking 'minimal,' . . . [the Second Circuit has]
demanded a more rigorous showing of inadequacy in cases where the putative intervenor and a
named party have the same ultimate objective.").

omitted).[52]

Finally, although this point is not necessary to my finding, I should note that the Movant

has interpreted Rule 24(a)(2) as requiring, apparently in all cases, only that the applicant show

that its interest *may* not be adequately represented by existing parties.  (Dkt. No. 380 [Mem. of

Law] at 21-22.)  In support of this interpretation, the Movant cites a district court case that was

decided in 1981, before the Second Circuit refined its interpretation of the current version of

Rule 24(a)(2), and its interpretation of a footnote from the Supreme Court case of *Trbovich v.*

*United Mine Workers*, 404 U.S. 528, 538 n.10 (1972), concerning the current version of Rule

24(a)(2).[53]

The former version of Rule 24(a)(2), enacted in 1937, stated in pertinent part, "Upon

timely application anyone shall be permitted to intervene in an action . . . when the representation

_____

[52]     For this reason, I find that this case is distinguishable from the cases relied on by
the Movant, which were either cases in which the United States was not suing in its role of
*parens patriae* or were cases not addressing the impact of the United States' suit in that role.
(Dkt. No. 380 at 21-22; Dkt. No. 411 at 20.)  *See Oneida Indian Nation of Wisconsin v. N.Y.*, 732
F.2d 261 (2d Cir. 1984) (United States was not suing in its role of *parens patriae*); *Oneida
Indian Nation of N.Y. v. N.Y.*, 201 F.R.D. 64, 71 (N.D.N.Y. 2001) (not addressing the impact of
the United States' role as *parens patriae*, apparently because the United States did not argue that
it was protecting the movant's interests; basing the Court's decision with regard to the fourth
element of Rule 24(a)(2) on the aforementioned Second Circuit case, in which the United States
was not suing in its role of *parens patriae*).
     In addition, I find that this case is distinguishable from those two cases because, in this
case, the Movant and the Mohawk Plaintiffs are not "conflicting claimants to the same land."
Rather, as previously discussed, the non-conclusory allegations of the Movant's proposed
complaint in intervention asserts only a "maintenance" and "preservation" interest in the lands in
question, while the Mohawk Plaintiffs assert a possessory interest in those lands.

[53]     (Dkt. No. 380 [Mem. of Law] at 21-22, citing *Cayuga Indian Nation of N.Y. v.
Carey*, 80-CV-930, 1981 U.S. Dist. LEXIS 15576, *12 (N.D.N.Y. Nov. 9, 1981), which relies
solely on *U.S. Postal Serv. v. Brennan*, 579 F.2d 188, 191 [2d Cir. 1978], which relies solely on
*Trbovich*, 404 U.S. at 538 n.10.)

of the applicant's interest by existing parties is or may be inadequate . . . ." 7 *Moore's Federal Practice* § 24App.01 (3d ed. 2003).  However, Congress revised Rule 24(a)(2) in 1966 by, *inter alia*, removing the "is or may be" language and inserting the clause "unless the applicant's interest is adequately represented by existing parties."  6 *Moore's Federal Practice* § 24App.05 (3d ed. 2003).

Starting in approximately 1984, the Second Circuit began to recognize that the current version of Rule 24(a)(2) imposes a more stringent requirement on a movant than did the former version.  *See Hooker*, 749 F.2d at 985-990 & n.16 ("The effect of the change from 'is or may be' to 'is' would seem to us to make the required showing of inadequacy more stringent.").  Indeed, an argument exists that the Second Circuit has gone so far as to hold that the current version of Rule 24(a)(2) requires that, in all cases, the movant must show that its interest *will* (not just *may*) not be adequately represented.[54]  However, I need not, and do not, so conclude in reaching my finding regarding the fourth element of Rule 24(a)(2).

---

[54]       *See Restor-a-Dental Lab., Inc. v. Certified Alloy Prod., Inc.*, 725 F.2d 871, 874 (2d Cir. 1984) (changing fourth part of four-part test of Rule 24[a][2] from a showing that the representation "might be" inadequate, as stated in *U.S. Postal Serv. v. Brennan*, 579 F.2d 188, 191 [2d Cir. 1978], to a showing that the representation "is not" adequate); *Washington Elec.*, 922 F.2d at 98 (holding that the movant "has not shown that there *will* be inadequate representation of its rights unless it is allowed to intervene" before considering the additional fact that the there was an identity of interest between the movant and a party) [emphasis added]. Such an argument is especially convincing considering that the "may be adequate" interpretation of the current version of Rule 24(a)(2) appears at odds with a plain reading of that rule and appears premised on a questionable rationale.  *See Trbovich*, 404 U.S. at 538 n.10 (relying solely on 3B J. Moore, *Federal Practice* § 24.09-1[4] [1969], which cites cases that either interpret the *prior* version of Rule 24[a][2] or that rely on the intent of *other* revisions to Rule 24[a][2] in 1966.)

43

## II.   PERMISSIVE INTERVENTION

Rule 24 provides, in pertinent part:

> **(b) Permissive Intervention.**  Upon timely application anyone may
> be permitted to intervene in an action: . . . when an applicant's claim or
> defense and the main action have a question of law or fact in common.
> . . .  In exercising its discretion the court shall consider whether the
> intervention will unduly delay or prejudice the adjudication of the
> rights of the original parties.

Fed. R. Civ. P. 24(b)(2).  Thus, there are at least two requirements for permissive intervention:

(1) a showing that the application is "timely"; and (2) a showing that the "applicant's claim or

defense and the main action have a question of law or fact in common."  Fed. R. Civ. P. 24(b)(2).

In addition, "whether the intervention will unduly delay or prejudice the adjudication of the rights

of the original parties" is a very important factor,[55] arguably creating a third requirement that the

movant has the burden to satisfy.[56]

Finally, it is important to note that "[t]he district court's discretion under Rule 24(b) is

very broad."  *H.L. Hayden Co. of N.Y., Inc. v. Siemens Med. Sys., Inc.*, 797 F.2d 85, 87 (2d Cir.

1986) (citations omitted).  "In fact, a denial of permissive intervention has virtually never been

---

[55]     *See* Fed. R. Civ. P. 24(b)(2) (requiring the court to consider this factor); *Brennan*,
579 F.2d at 191 (stating that this factor is "[t]he principal consideration set forth in the
[permissive intervention] Rule"); *Candelaria v. Greifinger*, No. 96-CV-0017, 1997 WL 642464,
*4 (N.D.N.Y. Oct. 14, 1997) (Pooler, D.J.).

[56]     *See Doe v. City of Waterbury*, 01-CV-2298, 2004 WL 726899, *1 (D. Conn.
March 31, 2004) (referring to factor as third "require[ment]") (citation omitted); *Alston v.
Coughlin*, 109 F.R.D. 609, 614 (S.D.N.Y. 1986) ("[T]he proposed intervenor under Rule
24(b)(2) *must* show that . . . intervention would not 'unduly delay or prejudice the adjudication of
the rights of the original parties.'") [emphasis added]; *Citizens for an Orderly Energy Policy, Inc.
v. Suffolk County*, 101 F.R.D. 497, 502 (E.D.N.Y. 1984) (referring to factor as third
"requirement") (citation omitted); *Mrs. W. v. Tirozzi*, 124 F.R.D. 42, 45 (D. Conn. 1982)
(referring to factor as third "requirement") (citation omitted); *U.S. v. Columbia Pictures Indus.,
Inc.*, 88 F.R.D. 186, 189 (S.D.N.Y. 1980) (referring to factor as third "requirement").

reversed." *H.L. Hayden Co.*, 797 F.2d at 87 (citation and internal quotations omitted); *see also U.S. v. Pitney Bowes, Inc.*, 25 F.3d 66, 73 (2d Cir. 1994) ("Reversal of a district court's denial of permissive intervention is a very rare bird indeed, so seldom seen as to be considered unique.") (citations omitted).

### A.    Whether the Application Is Timely

The Movant argues that the four factors of timeliness, discussed earlier in the Rule 24(a)(2) analysis, weigh in favor of a finding of timeliness.  (Dkt. No. 380 at 23; Dkt. No. 411 at 21.)  While most of the parties ignore this argument, one of the parties responds that the Movant's motion is not timely for the reasons discussed earlier.  (Dkt. No. 396 at 12.)  After carefully considering the above arguments and the case law cited in support of them, I find that the Movant's motion to intervene by permission is not timely, for the reasons previously discussed.  *See*, *supra*, Part I.A.2.

Having found that the Movant's motion to intervene by permission is not timely, sufficient grounds exist for the Court to deny that motion, even assuming the Movant has met the second requirement of a common question of law or fact, and even assuming that the "delay or prejudice" factor weighs in favor of intervention.  However, for the sake of thoroughness, I will address that requirement and factor.

### B.    Whether the Applicant's Claim and the Main Action Have a Question of Law or Fact in Common

The Movant argues that its proposed complaint in intervention shares issues of law and fact with the Amended Complaints filed in this action, in that both pleadings allege that New York illegally purchased and disposed of the St. Regis Lands and the Croil and Barnhart Islands

45

in violation of the Nonintercourse Act, entitling the respective claimant to relief for the wrongful divestment of its interest.  (Dkt. No. 380 at 23; Dkt. No. 411 at 21.)  While most of the parties ignore this argument, one of the parties responds that there is no common question of law or fact between the two pleadings because the Movant has no interest in this case, for the reasons discussed earlier.  (Dkt. No. 396 at 12.)

After carefully considering the above arguments and the case law cited in support of them, I find that the Movant's asserted claim and the main action appear to have a question of law or fact in common, namely, whether New York illegally purchased and disposed of the St. Regis Lands and the Croil and Barnhart Islands in violation of the Nonintercourse Act.  I acknowledge that, as explained earlier, I also find that the Movant does not claim an interest that is "direct, substantial, and legally protectable" for purposes of Rule 24(a)(2).  However, these two findings are not inconsistent because the standard for permissive intervention "plainly dispenses with any requirement that the intervenor shall have a direct . . . interest in the subject of the litigation."  *SEC v. U.S. Realty & Improvement Co.*, 310 U.S. 434, 459 (1940) (citation omitted); *see also Woburn Degreasing Co. of N.J. v. Spencer Kellogg & Sons, Inc.*, 3 F.R.D. 7, 8 (W.D.N.Y. 1943).[57]

Although the Movant has met this requirement for permissive intervention, sufficient grounds exist for the Court to deny that motion as explained above and below.

---

[57]     *See also Kootenai Tribe v. Veneman*, 313 F.3d 1094, 1108-1111 (9th Cir. 2002) ("Unlike Rule 24(a), a 'significant protectable interest' is not required by Rule 24(b) for intervention . . . .").

**C.      Whether the Intervention Will Unduly Delay or Prejudice the Adjudication of the Rights of the Original Parties**

The Movant advances several arguments with regard to this factor: (1) a review of the merits of the Movant's claims shows that those claims do not undermine the issues and facts involved in the land claim, because the Movant's claims are identical to the land claim; (2) now is the most appropriate time for intervention, given the lull in the settlement approval process created by the Supreme Court's decision in *City of Sherrill*;[58] (3) it is not uncommon for courts to permit intervention despite the recent commencement of discovery or the reaching of settlements; and (4) intervention would eliminate the risk of duplicative litigation, double liability, and garnishment of any settlement award.  (Dkt. No. 411 at 22-23.)  While most of the parties ignore these arguments, one of the parties responds that intervention would unduly delay and prejudice adjudication of the case, for the reasons discussed earlier.  (Dkt. No. 400 at 8-9.)

After carefully considering the above arguments and the case law cited in support of them, I find that intervention would unduly delay or prejudice the adjudication of the rights of the original parties.  I base this finding on the reason previously discussed in my analysis of the "prejudice to existing parties" factor of the timeliness element of Rule 24(a)(2)–namely, there would be prejudice in that the nature of the action would be radically changed.  *See*, *supra*, Part I.A.2.b.  Indeed, in this case, there is more prejudice to the parties under a Rule 24(b)(2) analysis than under a Rule 24(a)(2) analysis, because the latter analysis restricts the inquiry to whether there is prejudice to the parties resulting merely from the applicant's delay in seeking

---

[58]      Presumably, the Movant would argue that a lull in the settlement approval process in this case has been created also by the Second Circuit's decision in *Cayuga Indian Nation of New York*, which was decided on June 28, 2005, after oral argument on this motion on May 24, 2005.

intervention, while the former broadens the inquiry to whether there is prejudice to the parties resulting from the court's granting of intervention.  (Dkt. No. 411 at 12-13 [Movant's reply brief, recognizing this point of law].)

On balance then, I find that this factor weighs against permissive intervention.  I find the Movant's arguments to the contrary unpersuasive for reasons stated earlier.  Finally, I note that the "additional considerations" that the Movant cites as favoring of intervention (Dkt. No. 411 at 23) actually weigh against intervention, under the circumstances of this case.

In conclusion, I would like to emphasize a fact that I previously mentioned–that it appears that the Movant can bring a separate action against several parties under various theories of liability, something that the Movant apparently acknowledges.[59]  I respectfully suggest that the Movant consider commencing such a separate action, which at some point might be consolidated with the current action.

---

[59]      (Dkt. No. 395, Ex. 1 at 9-11 ["position paper" by Movant asserting, among other things, that it "may bring an action against any or all of the parties to the Litigation after the Litigation is . . . adjudicated."]; Dkt. No. 380 at 22 [Movant's initial brief, apparently conceding that it would be able to initiate a separate lawsuit]; Dkt. No. 411 at 20 [Movant's reply brief, conceding that it would be able to initiate a "separate lawsuit"]; Dkt. No. 411 at 23 [Movant's reply brief, contemplating "duplicative litigation" and "garnishment of any settlement award" from the current proceeding].)

**ACCORDINGLY**, for the reasons stated above, it is

**RECOMMENDED** that the non-party Mohawk Council of Kahnawá:ke's motion to intervene (Dkt. No. 380) be **<u>DENIED</u>**; and it is further

**ORDERED** that the Clerk of the Court serve a copy of this Report-Recommendation upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs*., 892 F.2d 15 [2d Cir. 1989]); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: July 25, 2005
      Syracuse, New York

George H. Lowe
United States Magistrate Judge